## AMERICAN CENT. INS. CO. v. HARRISON.

### No. 2604.

Court of Civil Appeals of Texas. Eastland.

Oct. 17, 1947.

Rehearing Denied Nov. 7, 1947.

Bryan & Bryan, of Houston, for appellant.

Ben J. Dean and L. D. Hawkins, both of Breckenridge, for appellee.

GRISSOM, Chief Justice.

W. J. Harrison obtained an insurance policy from the American Central Insurance Company for $2,500 on a one-story metal roof building, constructed of metal, and used as a livestock auction barn. The barn burned and Harrison sued said Com-

pany for $2,500 and interest. Trial was to the court. Judgment was rendered for plaintiff for the face value of the policy with interest and the company has appealed.

Appellant contends the judgment should be reversed (1) because the wooden pens adjacent to the metal barn were as a matter of law, a part of said barn, and, since the wooden pens were not destroyed, the property covered by the policy was not a total loss. (2) And because, as a matter of law, appellee had two policies on the metal barn, one issued to George Harrison by Hanover Insurance Company in the sum of $4,000 and the policy sued on, and, therefore, appellant is entitled to a credit on the amount to be recovered by W. J. Harrison on account of the insurance collected by George Harrison from the Hanover Company.

Prior to issuance of the policy sued on to W. J. Harrison, George Harrison obtained from Hanover Insurance Company a fire insurance policy for $3,800 on the "building and pens", located on three acres of land out of the northwest corner of a certain 25 acre tract near Breckenridge, Texas, the building being described as a metal building occupied as a livestock auction barn. George Harrison's policy also insured the contents of the barn for $200. Thereafter, W. J. Harrison obtained this policy insuring him against loss by fire and containing a provision that the insurance applied "only on the property described and located as provided herein." The property insured for $2,500 for the benefit of W. J. Harrison was described in his policy as the one-story metal roof, metal building, occupied as an auction barn, and located on the south side of the Albany highway one and a half miles west of Breckenridge, Texas. Immediately following this description, on the face of the policy appellant's agent wrote with a typewriter as follows: "His brother has a policy of $4,000 on the same barn. They are partners."

There was testimony that George Harrison owned three acres of land at the place mentioned in the policies; that W. J. Harrison was an experienced builder and they agreed that George Harrison should furnish the material and W. J. Harrison the skill and labor to build an auction barn at said site which thereafter, together with the auction business to be there conducted, should be owned equally by said brothers.

The evidence shows, or tends to show, that the metal barn was a total loss. The court found that it was a total loss. See Security National Fire Insurance Company et al. v. Kifuri, 120 Tex. 77, 36 S.W.2d 147. The evidence tends to show that, used in connection with the business of selling livestock at auction at said barn by the Harrison Brothers, there were livestock pens adjacent to the sides of said barn with alleys formed by one side of the pens and one side of the barn through which cattle were driven to and from a metal auction ring located in the front of said barn, where livestock was sold; that from the alleys, cattle were driven through a chute into a metal ring within the barn. The metal ring was evidently partly surrounded by seats for those attending the auction. The auction ring and barn were constructed of metal, but the pens were made of wood. There is evidence tending to show that said brothers and their respective insurers intended to insure only the undivided interest of the brother named in said policies and that said policies were not intended for the benefit of the partnership.

"A partner who insures partnership property in his own name without any stipulation or understanding that the insurance is for the benefit of the firm or his co-partner, is presumed to have insured only his own interest in the property." 26 Corpus Juris 86, Sec. 83. See, also, 44 C.J.S., Insurance, § 308.

Appellant contends that the property insured could not, as a matter of law, be a total loss because the wooden cattle pens were not destroyed by fire. Stated differently, it says the pens were, as a matter of law, a part of the property insured. On the face of the policy issued to George Harrison, his interest in both the barn and pens were expressly covered by the Hanover policy. George Harrison had his interest in the barn and pens insured for $3,800. Appellant proved that he was paid $3,634.90. Whether the deduction was on account of the fact that the pens, which were expressly covered by his policy, were not completely

destroyed is not shown. The policy sued on by W. J. Harrison makes no reference to pens. It is evident that the agent that issued the policy sued on knew of the existence of George Harrison's policy on the same barn; that George and W. J. Harrison were partners and George Harrison's policy was for the sum of $4,000. The property insured by W. J. Harrison was described only as a metal one-story auction barn with a metal roof. The statement that George Harrison had a policy on the same barn in the sum of $4,000 and that George and W. J. Harrison were partners was written into the face of the policy on a typewriter by the appellant's agent who issued the policy. See Camden Fire Ins. Ass'n v. Sutherland, Tex.Com.App., 284 S.W. 927.

With reference to whether, as appellant contends, the cattle pens "surrounded" the barn and were "attached" thereto, and, as a matter of law, became a part of the insured barn, we call attention to the following testimony by appellee:

"Q. All right, Mr. Harrison, what are the facts about the barns and pens, whether they were all one? A. No, they wasn't all one.

\* \* \* \* \* \*

"Q. \* \* \* I asked you whether or not the pens were tied right into the barn. A. No, they were on different land.

\* \* \* \* \* \*

"Q. Well, what are the facts about that? A. Well, we had pens that tied into the metal ring, that went in under the barn where the audience could look down on the ring. They tied into the auction ring, but they didn't tie into the barn.

"Q. You had other fences that went right into the barn, didn't you. A. We didn't have any connected with the barn, as I told you. They were connected with the ring.

"Q. But the ring was inside the barn wasn't it. A. Yes, but the alley separated the pens from the barn, because the cattle went through this alley into the ring.

\* \* \* \* \* \*

. "Q. The ring wasn't in the front of the building at all, was it. A. There wasn't any pens in front of the building."

The only possibly pertinent provision of the policy not previously mentioned relative to whether, as a matter of law, the wooden pens were a part of the metal barn described in the policy is the following provision of the policy, under the heading, "definitions:"

"Section I

"Building—Insurance on a building shall include everything which is legally a part of the building, except machinery which is not used solely in the service of the building. It shall also include, if not otherwise insured, the following property belonging to the insured as building landlord but not as tenant or occupant: maintenance equipment and supplies; floor coverings, window shades, and furnishings of corridors and stairs; and refrigerators and stoves.

"When fences, drives, walks, yard fixtures private garages, servants' houses and, if used solely in connection with the occupancy thereof, other outbuildings on the premises of the *dwelling* are not specifically insured, the insurance on a dwelling may be applied on such properties to the extent of their respective actual values, but in the aggregate not to exceed 10% of the amount of insurance on such dwelling." (Italics ours.)

The evidence shows and the court found that the property insured was not a dwelling. That renders inapplicable, if it were otherwise applicable, the provision that if fences on the premises of a "dwelling" were not specifically insured, the insurance on the "dwelling" might be applied to the fences, etc., "to the extent of their respective actual values, but in the aggregate not to exceed 10% of the amount of insurance on such dwelling. In connection herewith, we call attention to the fact that if said provision relative to a "dwelling" could apply to the barn described in the policy that, nevertheless, if the dwelling were a total loss, no per cent would remain to be applied to fences, etc., not specifically insured. We are of the opinion that the applicable policy provisions, considered with the circumstances surrounding the issuance of the policy, do not show as a matter of law that the wooden pens were a part of

420

the metal auction barn described in the W. J. Harrison policy. Therefore, the fact that the wooden pens were not destroyed by fire, does not preclude the insured from recovering the face value of his policy on account of the total destruction of the metal barn.

■ Appellant's points one to five, inclusive, attack the admission of testimony to the effect that the barn was a total loss and the court's findings and conclusions to the effect that it was a total loss. Appellant correctly asserts that the fact issue with reference to a total loss in such a case is whether or not the remnant of the structure remaining is reasonably adapted for use as a basis to restore the building to its condition before the fire, by reasonable prudent owner, uninsured and desiring such structure. However, the specific complaint as to the admission of such testimony was directed to appellee's question: "Was the building totally destroyed? A. Yes, sir." The objection made was that "it is a conclusion as to whether it was totally destroyed or not." When said objection was made appellee's counsel stated that he would ask appellee to state the facts and that counsel thought that after the witness stated the facts he should be permitted to state his conclusion. Thereafter, appellee was asked again "whether or not the building was totally destroyed", and he answered that it was. Regardless of whether or not, under some circumstances, such testimony might not be admissible, it did not constitute reversible error here. Furthermore, other witnesses so testified without objection.

■ Appellant further contends that because both George and W. J. Harrison obtained insurance policies covering the metal barn, that there was "other insurance" on the same property and, therefore, the pro rata liability clause is applicable. Applying this contention to the facts of this case, appellant says that appellee could in no event recover more than 25%₆₃rds of $3,391.20, or $1,345.71. Appellant then asserts that if its contention that the pro rata liability clause is applicable, is overruled that its liability, in any event, cannot exceed 50% of the loss because that was the extent of appellee's interest in the property insured. Apparently appellant's contention

that its maximum liability to appellee under the prorata liability clause is 25%₆₃rds of $3,391.20 is based upon George Harrison's proof of loss. This is not binding on W. J. Harrison. Appellee contends, and his contention finds support in the evidence, that the policy was issued by appellant with the understanding and intention on the part of both the company and appellee that it should cover only appellee's one-half interest in the property. 26 Corpus Juris 86, Sec. 84; 44 C.J.S., Insurance, § 314. As a partner, W. J. Harrison had an insurable interest in the property which would support a separate policy for his sole benefit. 44 C.J.S., Insurance, § 193. The clause relative to pro rating liability has no application to a "valued-policy statute which renders insurer liable for a total loss to the full amount of the insurance, and in such a case insured can recover on a valued policy the full amount of the policy regardless of other insurance, provided, * * * the several concurrent policies are issued with the knowledge or consent of the insurers * * *".

■ "As the liability of each insurer must be determined by the provisions of its policy, an insurer's liability for a fixed proportion of the loss cannot be affected, either to increase or decrease the amount of its payments, by the existence of other insurance or by the adjustments or settlements made by insured with other insurers, * * *." 45 C.J.S., Insurance, § 922. To require apportionment of the loss, the other fire insurance must generally cover the same property and interest therein against the same risk in favor of the same party. 45 C.J.S., Insurance, § 922. It is obvious, if appellee's evidence is to be believed, that the policies issued to George and W. J. Harrison, although to some extent they covered the same property, did not cover the same interest and, of course, were not in favor of the same party. Appellant's notation on this policy tended to show that it knew that George Harrison had a $4,000 policy on his interest in the same barn for his sole benefit and that the policy in question was intended to cover only W. J. Harrison's interest in the barn and was intended solely for his benefit. Since we are of the opinion that the trial court's finding

of total loss is supported by the evidence, appellant's contention last mentioned cannot be sustained.

"Where separate interests in the same property are insured under different policies, no salvage or reimbursement received for the loss under one policy can be taken into account to lessen the liability under the other." 46 C.J.S., Insurance, § 1392.

The proceeds of a fire insurance policy taken out by a joint owner on only his interest inures to his benefit alone. 46 C.J.S., Insurance, § 1141. The court found that the policies taken out by the Harrison brothers were intended to cover only the respective interest of each in the property insured and that neither claimed any interest in the proceeds of the others' policy. The evidence is sufficient to sustain the findings.

All of appellant's points have been considered and are overruled. The judgment is affirmed.