**STATE FARM FIRE & CASUALTY COMPANY, Appellant,**

v.

**Edward GRIFFIN and Irene Griffin, Appellees.**

**No. 01–93–00889–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 3, 1994.

O. Jefferson Dykes, III, Roger Townsend, William J. Boyce, Rebecca J. Cole, Lana S. Shadwick, Houston, for appellant.

John Roberson, Kirk Purcell, Ralphaell V. Wilkins, Houston, for appellees.

Before HUTSON–DUNN and ANDELL, JJ., and PRICE, J., Sitting by Assignment.*

## OPINION

FRANK C. PRICE, Justice, Sitting by Assignment.

Following a fire at their home, a dispute arose between the Griffins and their home-owner's insurance carrier, State Farm Fire and Casualty Company (State Farm), about the amount due from State Farm to the Griffins on their fire claim. On cross-motions for partial summary judgment, the trial court granted a partial summary judgment for the Griffins on their breach of contract claim. Subsequently, a jury returned a verdict in the Griffins' favor, finding that the cost of repairing the fire damage was $52,-529, that State Farm had breached its duty of good faith and fair dealing toward the Griffins, causing the Griffins to suffer mental anguish compensable by $30,000 apiece, and that $440,000 in punitive damages should be

---

\* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Hous-     ton, sitting by assignment.

assessed against State Farm. In 11 points of error, State Farm contends that the trial court erred by granting that partial summary judgment and denying State Farm's cross-motion (points one and two), and committed various other reversible errors (points three through 10). State Farm also contends that the judgment is void because the amounts pleaded and awarded as actual damages exceed the trial court's jurisdictional limit (point 11). We reject the jurisdictional challenge, and hold that under their insurance contract with State Farm, the Griffins are entitled to the $42,569.23 previously delivered to the Griffins by State Farm on their fire claim, and no more; accordingly, we reverse the judgment of the trial court, and remand the cause to the trial court for entry of a judgment on the Griffins' breach of contract claim consistent with our holding, and a judgment that the Griffins take nothing on their claim for breach of the duty of good faith and fair dealing.

In 1989, the Griffins purchased two insurance policies from State Farm: (1) a homeowners' policy, covering fire risk, *inter alia,* but expressly excluding damage due to flood; and (2) a policy covering flood risk only, and expressly excluding damage due to fire or any other peril other than flood. On May 18 of that year, the Griffins sustained a flood loss, and were paid $31,999.36 on the ensuing claim for damage to the structure. Nine months later, on February 11, 1990, the Griffins sustained the fire loss at issue here. State Farm's adjuster, Ms. Tousant, inspected the premises two days after the fire, and estimated the amount necessary to repair *all* then-existing damage to the Griffins' home at $59,547.98. On July 3, 1990, State Farm tendered payment on the Griffins' claim, but the check was for $37,257.18. The accompanying letter from Tousant explained:

> The flood policy, as with the homeowners policy, pays the actual cash value of the structure until the repairs are actually completed; only then can the replacement cost benefit be considered. You were paid the actual cash value for repairs. Several items were paid based on a total loss. It is your option to submit receipts once the work is completed in order to receive the replacement cost benefit.

> The estimate for your fire loss included the full replacement cost of the damages. Again, only the actual cash value is paid up front. Once an item is totaled you cannot be reimbursed for that item again, since its actual value has been paid. Since you cannot be paid twice, we subtracted the actual cash value portion of the totaled items not completed on the flood estimate from the actual cash value of your fire loss. Again, once the repairs are completed per the policy provisions, the replacement cost benefit can be considered.

> Enclosed is a draft in the amount of $37,257.18. This draft represents the fire damage to your structure that was not totaled on the flood loss.

The Griffins rejected that tender. Subsequently, State Farm recalculated the amount of the prior unrepaired flood damage, and tendered an additional $5,312.05, but the Griffins also rejected that offer. This suit followed, focusing upon the $16,978.75 that State Farm deducted from the $59,547.98 figure to arrive at its final tender to the Griffins of $42,569.23.

In point of error 11, State Farm contends that the judgment is void because the amounts pleaded and awarded as actual damages exceed the trial court's jurisdictional limit.

■ The upper jurisdictional limit in a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court is $100,000 in controversy as alleged on the face of the petition—excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs. TEX.GOV'T CODE ANN. § 25.0003(c)(1) (Vernon Supp.1994). That limitation is not a limitation on the court's power to render a judgment; so long as the original amount in controversy is within the jurisdictional limit, a county court at law may render judgment for an amount in excess of the statutory jurisdictional limit. *See Standard Fire Ins. Co. v. Stigger,* 635 S.W.2d 667, 669 (Tex.App.—Dallas 1982, no writ) (so holding under predecessor statute, former TEX.REV.CIV.STAT.ANN. art. 1970a).

State Farm's appellate briefing on this point is limited to a seven-sentence footnote that cites only section 25.0003 and asserts, in conclusory fashion, that the Griffins' seventh amended petition asks for more than $100,-000. In their seventh amended petition, the Griffins sought $59,547.98 in insurance benefits plus $40,000 in mental anguish damages, plus unspecified amounts for pre- and post-judgment interest, exemplary damages, and costs of court.

$99,547.98 does not exceed $100,000.

On appeal, the Griffins argue that their live pleading at trial was their pleading styled "Counter–Defendants' Third Amended Original Answer and Third Amended Counterclaim." In that pleading, the Griffins sought $51,761.46 in insurance benefits plus $48,000 in mental anguish damages, plus unspecified amounts for pre- and post-judgment interest, exemplary damages, and costs of court.

$99,761.46 does not exceed $100,000.

Point of error 11 is overruled.

In points of error one and two, State Farm contends that the trial court erred by granting the Griffins' motion for partial summary judgment and denying State Farm's cross-motion.

Under TEX.R.CIV.P. 166a(c) a summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 793–794 (Tex.App.—Beaumont 1988, writ denied). In a summary judgment proceeding, the burden of proof is on the movant, and all doubts about the existence of a genuine issue of fact are resolved against the movant. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982); *Rogers,* 761 S.W.2d at 795. Once the movant has established a right to a summary judgment, the burden shifts to the non-movant. The non-movant then must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671,

678 (Tex.1979); *United Business Mach. v. Entertainment Mktg., Inc.,* 792 S.W.2d 262, 264 (Tex.App.—Houston [1st Dist.] 1990, no writ).

A partial summary judgment, interlocutory when first rendered, is reviewable on appeal after it has been merged into a final judgment disposing of the whole case. *Pan American Petroleum Corp. v. Texas Pac. Coal & Oil Co.,* 159 Tex. 550, 324 S.W.2d 200, 201 (1959); *Waddell v. Huckabee,* 807 S.W.2d 455, 459 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Turboff v. Gertner, Aron & Ledet Invs.,* 763 S.W.2d 827, 828 (Tex.App.—Houston [14th Dist.] 1988, writ denied). The party seeking to uphold a partial summary judgment cannot rely on evidence introduced later in the case; the propriety of granting a partial summary judgment must be determined from the posture of the pleadings and evidence at the time the court granted the motion. *Seldon v. S & S Aggregates Co.,* 410 S.W.2d 231, 234 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.); *see also Kendall v. Whataburger, Inc.,* 759 S.W.2d 751 (Tex.App.—Houston [1st Dist.] 1988, no writ).

Where both parties file motions for summary judgment, and one is granted and one is denied, the denial may be considered by the reviewing court if the appealing party complains of both the granting of the opponent's motion and the denial of his own motion. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *McGuire v. Post Oak Lane Townhome Owners Ass'n,* 794 S.W.2d 66, 67 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

In their motion, the Griffins contended that "as a matter of law, State Farm cannot legally adjust the fire loss claim by subtracting money [paid to the Griffins] from the prior flood loss claim," and sought "a partial summary judgment against State Farm prohibiting them from prorating or deducting any amounts received by plaintiffs from the May 1989 [flood] claim from plaintiffs' February 1990 fire loss claim" and, in the alternative, sought "a partial summary judgment against State Farm by ruling that the flood insurance and homeowners' insurance poli-

cies cover different risks." In its motion, styled as a "counter-motion for partial summary judgment," State Farm sought a ruling that, "as a matter of law, [State Farm] properly omitted from the fire loss estimate, an amount representing prior unrepaired flood damage." The trial court granted a partial summary judgment for the Griffins that State Farm had breached its insurance contract with the Griffins.[1]

■ The summary judgment evidence presented by the Griffins and State Farm on their cross-motions was consistent, and did not raise any genuine issue of material fact.[2]

1. The Griffins contend that the trial court did *not* hold that State Farm breached the insurance contract. We agree that the order did not *expressly* state that the trial court was holding that State Farm had breached the insurance contract. What the order said was that "there is no genuine issue of material fact precluding a partial summary judgment on the *issue* addressed in plaintiffs' motion for partial summary judgment and defendant's counter-motion for partial summary judgment" (emphasis added) and that, in consequence, the Griffins' motion was granted and State Farm's motion was denied. The Griffins look to that language, and assert that "[t]he specific object of the Griffins' motion was a holding by the [trial] court 'prohibiting [State Farm] from prorating or deducting any amounts received by [the Griffins] from the May 1989 [flood] claim from [their] February 1990 fire loss claim' "; they evidently contend that they sought only an order establishing that the proration clause did not authorize State Farm to reduce the amount to be paid to the Griffins on their fire loss claim, without addressing the question of whether some other provision of the insurance contract authorized that reduction.

A Texas trial court may, in its discretion, enter an order establishing one or more agreed applicable propositions of law, under rule 166 of the Texas Rules of Civil Procedure. Such an order is to some degree analogous to a partial summary judgment. *See Travelers Indem. Co. v. Erickson's, Inc.*, 396 F.2d 134, 136 (5th Cir.1968) (interpreting provisions of Federal Rule of Civil Procedure 56(d) and 16 which are, respectively, identical and similar to Texas Rules of Civil Procedure 166a(e) and 166).

The record does not support the Griffins' interpretation of the trial court's order. Their motion complained that State Farm *had already* made an "unlawful proration" of insurance policies covering different risks, and, in addition, after asking for an order prohibiting State Farm from prorating or deducting any amounts received by the Griffins from the May 1989 flood claim from their February 1990 fire loss claim, asked, in the alternative, that the trial court enter "a partial summary judgment against State Farm by ruling that the flood insurance and homeowners' insurance policies cover different risks." Thereafter, the trial court and the parties treated the order on that motion as a partial summary judgment holding that State Farm breached its insurance contract: in the charge, the jury was not asked *whether* State Farm breached its insurance contract with the Griffins. Instead, question one asked the dollar amount "that it would cost to repair or replace the Griffins' dwelling with material of like kind and quality after the fire of February 11, 1990"—which was designed to measure the Griffins' damages for a breach of the insurance contract. All the other questions in the charge were germane only to the Griffins' bad faith claim.

2. The Griffins attached to their motion for partial summary judgment excerpts from the depositions of Tousant and her superior at State Farm, Mr. Owens. According to the motion, those excerpts showed that "State Farm decided to deduct [approximately] $22,000 from [the amount to be tendered to the Griffins on their] fire loss claim because of [their] previous flood damage" to the property. The difference between Tousant's $59,547.98 estimate of the total fire and unrepaired flood damage to the Griffins' home, and State Farm's original tender of $37,257.18, is $22,290.80.

The Owens excerpt attached to the Griffins' motion included a deposition exhibit, an internal State Farm memorandum about the Griffins' fire claim. In pertinent part, the memorandum said:

On May 18, 1989 the home sustained flood damage. No repairs were made to the structure other than painting. State Farm paid $31,999.36 for structure damage to the insured and the mortgage company.... The bank still holds $21,999.36 of that amount. Ten thousand dollars was advanced by the bank to the policyholder for repairs.... State Farm structural estimate amounted to $59,547.98. From this structural estimate the adjuster discovered several areas needing replacement which were previously paid, yet not repaired from the flood claim. As the insured is unable to profit from a loss these amounts were subtracted from our estimate:

| | |
|---|---|
| Drywall | $ 1,788.60 |
| Insulation | 506.55 |
| Carpet | 5,047.83 |
| Vinyl | 1,368.53 |
| Cabinet | 7,197.97 |
| Wallpaper | 562.24 |
| Painting | 986.76 |
| Cedar Wall | 1,430.58 |
| Doors | 756.00 |
| Sub–Total | $19,645.06 |
| P & O | 2,645.74 |
| Total | $22,290.80 |

These amounts were judiciously compared with the evidence at the scene of the fire to the prior estimate for flood damage.

All of it showed that State Farm adjusted the fire loss claim by estimating the amount necessary to repair both fire damage and prior unrepaired flood damage to the Griffins' home at $59,547.98, then subtracting $16,978.75 in prior unrepaired flood damage from that figure, to arrive at the amount of fire damage, $42,569.23, which State Farm tendered by delivering two checks. The cross-motions presented one question: whether the insurance contract permitted State Farm to do what it undisputedly did. The construction of an unambiguous written contract is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Markert v. Williams*, 874 S.W.2d 353, 356 (Tex.App.—Houston [1st Dist.] 1994, writ requested); *Phillips Natural Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Moreover, the Griffins concede on appeal that the construction of their particular written homeowners' policy is a question of law.

In their motion for partial summary judgment, the Griffins first focused upon the following provision of the homeowners' insurance policy:

> The company shall not be liable for a greater proportion of any loss from any peril or perils than (a) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured hereunder, nor (b) for a greater

proportion than the amount hereby insured bears to all insurance, whether collectible or not, covering in any manner such loss; nor (c) where this policy is subject to a deductible clause, its pro rata share in excess of the deductible amount.

The flood insurance policy contained a similar provision.[3] Such a provision is commonly known as an "other insurance" or "pro rata" clause. The legal effect of such a clause is to provide that each insurer shall not be liable for any greater proportion of any loss which may occur than the amount named in the policy bears to the entire amount of the insurance coverage available. *Traders & Gen. Ins. Co. v. Hicks Rubber Co.*, 140 Tex. 586, 169 S.W.2d 142, 147 (1943). Where there are two insurers who have contracted to pay a loss and each insurer's policy contains a pro rata clause, each insurer is liable to the insured only for its proportion of the loss. *Employers Casualty Co. v. Transport Ins. Co.*, 444 S.W.2d 606, 608 (Tex.1969); *United States Fire Ins. Co. v. Stricklin*, 556 S.W.2d 575, 578 (Tex.Civ.App.—Dallas 1977), *writ ref'd n.r.e. per curiam*, 565 S.W.2d 43 (Tex.1978). For other insurance to trigger the operation of a pro rata clause and relieve an insurer of liability beyond that specified in the pro rata clause, the other insurance must generally cover the same property and interest therein against the same risk in favor of the same party. *American Cent. Ins. Co. v. Harrison*, 205 S.W.2d 417, 420 (Tex.Civ.App.—Eastland 1947, writ ref'd n.r.e.).[4]

---

In the excerpts from his deposition attached to State Farm's motion, Edward Griffin testified that there was unrepaired flood damage at the time of the fire; and that of the $31,999.36 State Farm paid on the flood claim, $21,999.36 was still in the bank and $10,000 had been spent on repairs. Also attached to State Farm's motion was Tousant's affidavit, in which she described her calculations, using her revised figures for the amount of the prior unrepaired flood damage:

> In order to come up with a correct figure for the cost of repairing the dwelling, I initially made an estimate of $59,547.98, which represented not only the amount it would cost to repair the house due to the fire, but also the amount it would cost to repair items destroyed in a flood which had occurred in May of 1989, but which had not been repaired prior to the fire. The Griffins had already been compensated fully by State Farm for their flood loss in 1989, but had not repaired the dwelling prior

to the fire. Therefore, I deducted $16,978.75, representing prior unrepaired flood damage, from the overall estimate of $59,548.98, to arrive at the amount of fire damage, $42,569.23.

3. In the flood policy, the proration language used was:

> We shall not be liable for a greater proportion of any loss, less the amount of deductible, from the peril of flood than the amount of insurance under this policy bears to the whole amount of flood insurance ... covering the property, or which would have covered the property except for the existence of this insurance, whether collectible or not.

4. In *Harrison*, a metal barn was destroyed by fire, and two fire policies insured two brothers' respective undivided interests in the property.

In their motion for partial summary judgment, the Griffins next correctly observed that their homeowners' insurance policy explicitly excludes coverage for loss caused by or resulting from flood. However, none of the Griffins' summary judgment proof was directed toward establishing a breach of contract by showing that no prior flood loss had occurred, or that they had not already been paid on their claim for that loss, or that the amount of the prior flood loss or the payment was less than what State Farm asserted.

■ Instead, the Griffins' approach was to persuade the trial court that because (a) other insurance triggers the operation of a pro rata clause and relieves an insurer of liability beyond that specified in the pro rata clause *only if both policies cover the same risk*, and (b) the flood and homeowners' policies covered different risks, therefore it follows that (c) the pro rata clause was inapplicable in this instance, and accordingly *did not authorize* the $16,978.75 deduction State Farm undisputedly made, and, in turn, it then ultimately follows that (d) the $16,978.75 deduction constituted a breach of the insurance contract.

205 S.W.2d at 418. The court held that the pro rata clause was inapplicable because although the policies covered the same property to an extent, they were not in favor of the same party and did not cover the same interest. 205 S.W.2d at 420. *See also Detroit Fire & Marine Ins. Co. v. Harkey*, 5 S.W.2d 545, 545, 546 (Tex.Civ.App.—Texarkana 1928, no writ) (where roof of house was destroyed by hail but not damaged at all by the accompanying wind, and appellant insurer covered wind and/or hail damage while the other insurer covered only wind damage, held: pro rata clause inapplicable and appellant liable to pay full amount it underwrote on coverage applying only to the roof).

5. *Paramount Fire Ins. Co. v. Aetna Casualty and Sur. Co.*, 163 Tex. 250, 353 S.W.2d 841, 844, 845 (1962); *Highlands Ins. Co. v. City of Galveston*, 721 S.W.2d 469, 471 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Cumis Ins. Soc'y, Inc. v. Republic Nat. Bank of Dallas*, 480 S.W.2d 762, 765 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.) ("Insurance on property, as well as other insurance, is by definition indemnity against loss. Otherwise it would be against public policy." (footnote omitted)); *see also Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex.1994) (a title insurance policy is a contract of indemnity against losses caused by defects in title); *Gutierrez v. Karl Perry Enters., Inc.*, 874 S.W.2d 103, 107 (Tex.App.—El Paso 1994, n.w.h.) (quoting

We agree that the pro rata clause was inapplicable here, and did not authorize the deduction State Farm made. Underlying the final step in the Griffins' reasoning, however, was an unstated assumption—namely, that the pro rata clause was the *only* provision of the insurance contract that *could have authorized* that deduction. There, we disagree.

■ An insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss.[5] The liability of the insurer is based upon the contract, and in an action for damages brought upon a lawful contract of insurance, the provisions of the contract govern the measure of the insured's recovery.[6] Where it applies, a pro rata clause in an insurance contract does not create an *exception* to the principle of indemnity, but instead *implements* that principle where two different policies provide coverage for a loss,[7] by eliminating the potential for a double recovery of that loss that would otherwise exist in that situation.[8] But where, as here, the pro

Black's Law Dictionary definition of "insurance").

6. 15 M. Rhodes, Couch on Insurance 2d § 54:2 (rev. ed. 1983).

7. *See* Robert E. Keeton, Insurance Law § 3.1(c)(ii) (1971) (a proration rule proportionately reduces insured's rights against each respective insurer "just enough that their total value does not exceed the loss sustained"); *see also McCormick v. Travelers Indem. Co.*, 22 Mass.App.Ct. 636, 638, 640, 496 N.E.2d 174, 175, 176 (1986) (the existence of two insurance policies did not give the insureds the right "to recover in excess of their loss"; moreover, trial judge was correct in refusing to subtract flood insurance proceeds from the judgment because pro rata clause did not permit proration of the loss where the two policies covered different risks *and because plaintiffs' recovery did not exceed their actual loss* ); *see generally* R. Keeton, Insurance Law §§ 3.1, 3.11 (1971).

8. For instance, in *Hicks*, the injuries to pedestrian Harper were covered both by truck operator Hicks' $10,000 public liability insurance policy from Employers (because the accident occurred on the sidewalk adjacent to Hicks' building) and by a $20,000 policy from Traders' (because Harper's injuries were caused by the use of one of Hicks' trucks). The court held that Traders' was liable to Hicks only for two-thirds, and Employ-

rata clause does not apply, the insurance contract remains, by its very nature, a contract of indemnity—the terms of which measure the amount, if any, owed from insurer to insured.

■ Here, State Farm paid a total of $31,999.36 to the Griffins and the Griffins' mortgage company as the actual cash value of the prior loss. $16,978.75 of that amount had not been expended on the property at the time of the fire. The Griffins could have been paid indemnity for that amount a second time following the fire only if they had lost that amount a second time. They did not lose that amount a second time, however; because that $16,978.75 had not yet been expended on repairing the Griffins' house, it was still in the form of money in the bank and therefore safe from the fire and not lost a second time when the house burned. Finally, the contractual measure of damages for both the loss at issue here and the prior loss was the same: actual cash value.[9] It was therefore legally permissible for State Farm to subtract from the $59,547.98 total damage figure the $16,978.75 that represented the actual cash value of the unrepaired damage from the prior loss, and to tender the Griffins $42,569.23—because for State Farm to have offered the Griffins more would have exceeded the scope of State Farm's contractual obligations to the Griffins, in two respects: it would have allowed the Griffins to recover twice for a loss they incurred only once, and would have allowed the Griffins to recover under the homeowners' policy for a flood loss, which was a type of loss expressly excluded from coverage under the homeowners' policy. *See Commercial Union Ins. Co. v. Stanmike Inv. Co.,* 475 S.W.2d 295, 298 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.) (when insured property burned down, insurer was entitled to credit against the $35,000 policy limit for the $2953 it had paid two months earlier for a storm loss which was not repaired prior to the fire; judgment reformed by appellate court to $32,047); *see also* 15 MARK S. RHODES, COUCH ON INSURANCE 2d § 54:6 (rev. ed. 1983).[10]

The trial court erred in granting partial summary judgment for the Griffins on their breach of contract claim against State Farm. State Farm's cross-motion for summary judgment on the breach of contract claim should have been granted instead. Points of error one and two are sustained. In consequence, we do not reach points of error three through 10.

■ State Farm did not move for summary judgment on the breach of good faith and fair dealing claim. However, that claim was based on the same act—calculating the amount due to the Griffins by subtracting the

ers' was liable to Hicks for only one-third, of the $10,000 judgment that Harper took against Hicks. 169 S.W.2d at 144, 147.

9. The homeowners' policy provides, in pertinent part:

> Unless otherwise provided, ... liability of the company shall not exceed: the specified limits of liability; nor the actual cash value of the property at the time of loss ascertained with proper deduction for depreciation; nor, the amount it would cost to repair or replace the property with material of like kind and quality, with proper deduction for depreciation, within a reasonable time after the loss without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair; not shall it exceed the interest of the insured.

The corresponding provision of the flood policy reads:

> [W]e insure you and your legal representatives against all "Direct Physical Loss By or From Flood" to the insured property as defined in the "Definitions Section" of this Agreement to the extent of the actual cash value of the property at the time of loss but not exceeding (1) the cost of replacing the insured building at the time of loss with material of like kind and quality and (2) the actual cash value of any insured personal property at the time of loss.
>
> ....
>
> "Actual Cash Value" means the replacement cost of an insured item of property at the time of loss, less the value of physical depreciation as to the item damaged.

10. Where the harm sustained by the insured is the result of two or more causes or risks, some of which are not covered, ... the insurer is only liable for so much of the total harm as was caused by the risk covered by the policy. For example, a fire insurer is liable for only so much of the loss as was caused by a peril covered by the policy. Consequently, where harm is caused by a noncovered risk which is then followed by harm caused by covered fire, the fire insurer is only liable with respect to the latter.

$16,978.75 amount from the $59,547.98 figure—that we have held was permitted by the insurance contract. Because that act was not a breach of the insurance contract, that act could not have subjected State Farm to liability for breach of the duty of good faith and fair dealing. *See Aranda v. Ins. Co. of North America,* 748 S.W.2d 210, 213 (Tex. 1988) (under the bad faith cause of action, "carriers will maintain *the right to deny invalid or questionable claims* and will not be subject to liability for an erroneous denial of a claim"). Accordingly, although we may not render judgment on the good faith and fair dealing claim in favor of State Farm: because State Farm has conclusively established that it is entitled to judgment as a matter of law and no questions of law or fact remain, we reverse the trial court's judgment on that claim and remand the case to the trial court with instructions to enter judgment in favor of State Farm on that claim. *Cf. Shank, Irwin, Conant & Williamson v. Durant, Mankoff, Davis, Wolens & Francis,* 748 S.W.2d 494, 500 (Tex.App.—Dallas 1988, no writ) and *Browning-Ferris, Inc. v. Johnson,* 644 S.W.2d 123, 128 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (both employing this same approach). So that the entire judgment will be embodied in one instrument, we elect not to render judgment on the breach of contract claim, but instead we direct the trial court to enter the judgment in State Farm's favor on the breach of contract claim as well.

The denouement is that the Griffins are entitled to the $42,569.23 previously delivered to them by State Farm on their fire claim, and no more.

We reverse the judgment of the trial court, and remand the cause to the trial court for entry of a judgment on the Griffins' breach of contract claim consistent with this opinion, and a judgment that the Griffins take nothing on their claim for breach of the duty of good faith and fair dealing.