COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-122-CV

 

 

AARON BRUTON                                                                 APPELLANT

 

                                                   V.

 

UNDERWRITERS AT LLOYD=S,                                                APPELLEES

LONDON, MARSHALL CONTRACT 

ADJUSTERS, INC., JAMES NICHOLS, 

CASUALTY TRUCK & EQUIPMENT, 

INC., AND BOBBY COGGIN

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  Introduction








In two issues, Appellant Aaron Bruton asserts
that this appeal should be abated for the trial court to file findings of fact
and conclusions of law and that Appellee Underwriters at Lloyd=s London
(AUnderwriters@) failed
to acquire equitable title to Bruton=s
trailer by tendering payment of the policy limits.  We reverse and remand.

                              II.  Factual and Procedural History

Bruton, a self-employed truck driver, bought a
1996 Clement trailer in August 1999 for $12,500.[1]  Soon thereafter, he purchased a $10,000
insurance policy for the trailer from Underwriters.  Around October 17, 2001, the trailer tipped
over while dumping a load of rock; Bruton towed the trailer into Vantage Trailer
for repairs.[2]  Bruton reported a claim to Underwriters and
advised them that certain repairs were necessary for the trailer to dump again.

The adjuster, Appellee James Nichols, employed by
Appellee Marshall Contractors, Inc., determined that the cost to repair the
trailer would be approximately $14,600. 
Based upon this estimate, Marshall Contractors, Inc. declared the
vehicle totaled and through its agent, Rocky Engblad, placed the trailer up for
salvage bids.  Appellee Casualty Truck
& Equipment, Inc. (ACasualty@)
submitted a bid.








Around October 24, 2001, Nichols notified
Casualty that it had made the highest bid and he instructed Casualty to:  APlease
pick up trailer at Vantage.  Will send
title once we conclude with Insured. 
Thanks, James Nichols, Hartford Lloyds UNDERWRITERS Insurance Company.@  Two days later, Casualty paid a $100 storage
fee and towed the trailer back to its place of business.  Casualty had a remaining balance of $700 to
be tendered upon receipt of title. 
Around October 29, 2001, despite not having received title to the
trailer, Casualty purported to sell the trailer to Willie Bradford for approximately
$1,500.

On October 31, 2001, Bruton received payment in
full under the policy in the amount of $9,000[3]
conditioned on the execution of a power of attorney appointing a principal of
Marshall Contractors, Inc. to transfer title to the trailer.  Bruton did not execute the power of attorney,
nor attempt to negotiate the draft, but instead he made attempts to work a deal
with Underwriters whereby he would receive the trailer back by paying the
salvage value of the trailer, with Underwriters paying to him the remaining
difference between the policy limits and the deductible plus the salvage value.








According to Bruton, he did not discover that the
trailer was no longer at the repair shop until the Saturday after Thanksgiving
2001.  At that time, Bruton contacted
Nichols, who informed him that the trailer had been sold to Casualty as
salvage.  Bruton then contacted Casualty=s
principal, Appellee Bobby Coggin, to determine what had happened to the trailer.  Coggin told Bruton that the trailer had been
cut up for salvage.

Around June 13, 2002, Bruton discovered that the
trailer had not, in fact, been cut up for salvage, and he confronted Bradford
at a truck stop in order to confirm that the trailer was actually his; Bruton
claimed that the VIN number and the license plate had both been changed but the
trailer was, in fact, his.  Bradford
informed Bruton that he had purchased the trailer from Coggin and that Casualty
had title to the vehicle.  In June 2002,
however, because Bradford was unable to properly tag and license the trailer,
he returned the trailer to Casualty. 
Bruton then sought help from the Department of Public Safety (ADPS@) in an
attempt to recover his trailer; this resulted in the trailer being impounded
sometime during September 2002, at Casualty for approximately two years, until
March 2004.[4]








Casualty made numerous attempts to obtain title
from Marshall Contractors, Inc.; however, after twenty-one months without any
success, DPS Trooper David Martinez told Casualty to inquire about a sheriff=s
auction.  On March 10, 2004, Casualty
took the trailer to a licensed storage facility in Amarillo.  On March 17, 2004, all lienholders and owners
were notified of the impeding sheriff=s
auction, and on May 25, 2004, Bruton=s
counsel and Underwriters= counsel were sent notice from
Marcus Norris, the City Attorney of Amarillo, that the trailer was impounded
and it would be placed on the auction block in one week unless a party redeemed
it.  On June 3, 2004, because no party
had reclaimed the trailer, it was assigned to Casualty free and clear of all
liens and claims of ownership.

Bruton filed suit against Underwriters, Marshall
Contractors, Inc., and Nichols for breach of contract, breach of the duty of
good faith and fair dealing, violations of article 21.21 of the insurance code,
violations of the Deceptive Trade Practices Act, and conversion.  Bruton later amended his petition to include
claims for conversion against Coggins, Casualty, and Bradford.  In December 2005, by an agreed order of the
trial court, the trailer was returned to Bruton, who used the trailer up to the
time of trial.








Bruton alleged he suffered damages by his loss of
use of the trailer.  He initially leased
a replacement trailer for two months at a total cost of approximately $2,100,
and then he financed the purchase of a replacement trailer, costing
approximately $24,000.  The parties
stipulated that the value of the damaged trailer before the accident was
$15,250.  Bruton testified that the cost
to repair the trailer to return it to operable condition was approximately
$1,300.  Bradford informed Bruton that he
had performed $2,200 worth of work on the trailer.  Nichols determined that the cost to repair
the trailer was approximately $14,600. 
According to Bruton, however, only some of the repairs listed on Nichols=s
estimate were necessary in order to return the truck to operable condition.








In August 2007, at the close of the evidence, the
trial court instructed the parties to submit written briefs on the following
issue:  when an insurance company tenders
full payment of the covered loss in payment of a claim, is it permitted to
dispose of the property under a legal and equitable title theory, or is it
prohibited from doing so until it receives the power of attorney signed by the
insured?  After considering the briefs of
all parties, the trial court sent notice of its intended ruling and signed the
final judgment on December 26, 2007, awarding Bruton $9,000 less various
offsets for a total of $6,648.41.  The
trial court ordered Bruton to deliver the trailer to Casualty, and further
ordered Casualty to pay Underwriters $700 as salvage for the trailer.  Finally, the trial court ordered that Bruton
take nothing against the remaining defendants and that he was not entitled to
attorneys= fees.  Bruton now appeals the trial court=s
judgment.

                                        III.  Equitable Title

In his second issue, Bruton asserts that the
trial court erred by holding that Underwriters obtained equitable title to his
trailer upon tendering payment of the policy limits.








We review the legal conclusion regarding
equitable title de novo.  Yfantis v.
Balloun, 115 S.W.3d 175, 179 (Tex. App.CFort
Worth 2003, no pet.).  It is axiomatic
that an insurance policy is an insurance contract and the insurer=s
liability under the contract, if any, is based on its terms and
provisions.  State Farm Fire &
Cas. Co. v. Griffin, 888 S.W.2d 150, 156 (Tex. App.CHouston
[1st Dist.] 1994, no pet.).  We construe
insurance policies according to the same rules of construction that apply to
contracts generally.  Nat'l Union Fire
Ins. Co. of Pittsburgh, PA v. Crocker, 246 S.W.3d 603, 606 (Tex.
2008).  Enforcing the parties=
expressed intent is our primary concern. 
See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex.
1994).  If an insurance contract uses
unambiguous language, we must enforce it as written.  See Puckett v. U.S. Fire Ins. Co., 678
S.W.2d 936, 938 (Tex. 1984).  If,
however, a contract is susceptible to more than one reasonable interpretation,
we will resolve any ambiguity in favor of the insured.  Id. at 938.  Policy terms are given their ordinary and
commonly understood meaning unless the policy itself shows the parties intended
a different, technical meaning.  Gonzalez
v. Mission Am. Ins. Co., 795 S.W.2d 734, 736 (Tex. 1990).  ANo one
phrase, sentence, or section [of the policy] should be isolated from its
setting and considered apart from the other provisions.@  Forbau, 876 S.W.2d at 134.

Bruton asserts that Underwriters did not acquire
equitable title to his trailer merely by tendering payment of the policy
limits.  In response, Underwriters argues
that under the plain meaning of the policy=s
language, they did, in fact, have the right to take Bruton=s
trailer once they had tendered payment for the agreed value, in this case the
policy limits.








Underwriters contends that based on the following
language in the policy:  A[it]
shall be optional with the Underwriters to take all or any part of the property
at the agreed or appraised value,@ it
received equitable title to Bruton=s
trailer upon the tendering of payment. 
However, we cannot and do not agree with this conclusion.  There is nothing in the plain language of the
policy that would have put Bruton on notice that once Underwriters tendered him
a check, he would lose all rights to his property.  Although the policy unambiguously provides
Underwriters with the right to take possession of the property, the policy
fails to mention when that right attaches.  Underwriters=s
assertion that the right attaches upon the tendering of payment is but one
interpretation.  Another reasonable
interpretation would be that the right does not attach until the insured has
negotiated the check and executed a power of attorney to assign title.  Therefore, because we are to resolve any
ambiguity in favor of the insured, we hold that Underwriters did not have the
right to sell Bruton=s trailer until Bruton had
negotiated the check and executed the power of attorney.  Puckett, 678 S.W.2d at 938.  Accordingly, we sustain Bruton=s second
issue.[5]

                                          IV.  Conclusion

Having sustained Bruton=s second
issue and having disposed of Bruton=s first
issue, we reverse and remand the judgment of the trial court for further
proceedings consistent with this opinion.

 

 

BOB MCCOY

JUSTICE

 

PANEL: LIVINGSTON and
MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by
Assignment).

 

BRIGHAM, J. dissents
without opinion. 

 

DELIVERED: April 2, 2009











[1]This amount reflects a
subtraction from the total price of $19,300 for the trade-in value of a 1969
Hobbs trailer.





[2]As a result of the accident,
the front cap portion of the tarp was torn, the dump arms were twisted and
mangled, and the kingpin on the fifth wheel had to be be cut off so that the
trailer could be towed into the repair shop.





[3]$10,000 (policy amount) -
$1,000 (deductible).





[4]According to Casualty,
during the two years that the trailer remained on its lot, Casualty was never
paid any storage fees, was never contacted by Bruton, and was never instructed
to return the trailer to Bruton by any party.





[5]Because we determine that
Underwriters did not obtain equitable title to Bruton=s trailer upon tendering
payment of the policy limits, we need not address Bruton=s first issue pertaining
to findings of fact and conclusions of law. 
See Tex. R. App. P. 47.1.