NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellant,

v.

Catherine GERLICH, Appellee.

No. 04–96–00417–CV.

Court of Appeals of Texas,
San Antonio.

June 10, 1998.

Rehearing Overruled Sept. 4, 1998.

Melvin A. Krenek, Andrew Robert Kunau, Melvin A. Krenek & Associates, San Antonio, for Appellant.

Fidel Rodriguez, Jr., Law Offices of Fidel Rodriguez, Jr., San Antonio, Larry Zinn, San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF, LOPEZ, STONE, GREEN, DUNCAN and ANGELINI, JJ.[1]

## OPINION

LOPEZ, Justice.

Nationwide Mutual Insurance Company ("Nationwide") appeals from a judgment rendered in favor of Catherine Gerlich ("Gerlich") in a breach of contract action. In its sole point of error, Nationwide contends that the evidence is legally insufficient to support the trial court's finding that Nationwide was not entitled to offset the amount paid Gerlich under the personal injury protection ("PIP") provision of her policy against the amount to be paid to her under the uninsured/underinsured motorists ("UM") provision of that policy. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

On March 22, 1995, Gerlich suffered physical injuries when the car she was driving was hit by a car driven by an uninsured motorist. At the time of the collision, Gerlich was covered by a Nationwide personal automobile liability policy that included PIP and UM coverage provisions. The policy also includ-

---

1. A majority of the justices on this court called for en banc review pursuant to Tex.R.App. P. 41.2

(c).

ed a limitation of liability clause which stated:

> In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

In April of 1995, Nationwide paid Gerlich $2,208.72 in PIP benefits. Subsequently, Gerlich settled her claim with Nationwide under the UM coverage provision for $3,500. Relying on the limitation of liability clause, Nationwide asserted that it was entitled to a credit against the settlement amount for the PIP benefits it previously paid to Gerlich, and Nationwide tendered to Gerlich a check for $1,291.28. Gerlich sued Nationwide for breach of contract, and the case was tried before the bench on stipulated facts. The trial court held that Nationwide was not entitled to a credit for the PIP benefits.

## ARGUMENT AND AUTHORITIES

■ In order for Nationwide to be entitled to an offset for the PIP benefits, Nationwide had the burden of demonstrating that a failure to allow the offset would result in a double recovery. See Bergmann v. Sentry Ins., 422 So.2d 972, 973 (Fla.Dist.Ct.App. 1982). We find that Nationwide failed to meet this burden.

■ The stipulated facts were signed by counsel for both parties. The parties stipulated that they reached a settlement under the UM coverage for the total amount of $3,500.[2] The parties never stipulated that the actual damages suffered by Gerlich as a result of the accident amounted to $3,500.

In its brief, Nationwide states: "the actual damages sustained by Gerlich in the present case, as referenced in the stipulated facts and stated in the final judgment, were $3,500,"

citing the stipulated facts and the trial court's judgment. That is a correct statement. The trial court found that Gerlich sustained $3,500 in damages as a result of Nationwide's breach of contract, which was the amount of the parties' settlement under the UM coverage that Nationwide refused to pay. However, the trial court did not find that Gerlich sustained $3,500 in actual damages as a result of the accident. In fact, the trial court could not have made such a finding because no evidence regarding the damages Gerlich sustained was even presented.

For various reasons, parties often settle a claim for a sum that is less than the amount of damages that they believe they have actually sustained. Oftentimes, an amount that is drastically less. Therefore, the stipulation that Gerlich settled her claim under the UM coverage for $3,500 does not equate to a stipulation that Gerlich sustained only $3,500 in actual damages as a result of the accident. In fact, we cannot tell from our record what the basis for the $3,500 settlement amount was or what type of damages the settlement amount was intended to compensate. See Bergmann, 422 So.2d at 973 (offset disallowed where determination of duplication of benefit not possible from appellate record). In view of the fact that Gerlich had received PIP benefits, one logical conclusion was that she agreed to settle her UM claim for $3,500 to compensate her for the losses that the PIP benefits did not cover. Thus, there would not be a double recovery because Gerlich was compensated for the actual damage she sustained in an amount that was at least $5,708.72, the sum of $2,708.72 for her out of pocket costs for medical bills and lost wages and $3,500 for at least a portion of her damages for mental anguish, future medical expenses or future disability.

Nationwide relies on James v. Nationwide Property & Cas. Ins. Co., 786 S.W.2d 91 (Tex.App.—Houston [14th Dist.] 1990, no writ), to support its position. In view of the foregoing facts, however, James is easily distinguishable. In James, the parties did stip-

---

2. Stipulation number 7 states: "A settlement was reached between Gerlich and Nationwide under the Uninsured/Underinsured Motorist Coverage for the total amount of $3,500.00. Nationwide contends that it is entitled to a credit for the amount of the PIP benefits paid to Gerlich by Nationwide. Gerlich's position is that Nationwide is not entitled to this credit."

ulate the amount of actual damages sustained as a result of the accident as follows:

> Plaintiff Betty James sustained total damages as a proximate cause of the acts and omissions of the uninsured motorist in the amount of $4,000 (including those damages paid under P.I.P. in the amount of $840.00).

No similar stipulation was made in this case.

Because there is no evidence in our record supporting a finding that a failure to offset the PIP benefits would result in a double recovery by Gerlich, the trial court did not err in refusing to grant such an offset. We pause to note the irony presented by Nationwide's double recovery assertion. If Nationwide prevailed in this case, Gerlich would have paid two premiums but received only one coverage, resulting in a double recovery for Nationwide. On the other hand, Nationwide would have been permitted to collect premiums for two types of coverage,[3] but it would only have been required to pay benefits under one coverage.

In addition to Nationwide's failure to prove a double recovery by Gerlich, the trial court's judgment is further supported by the Texas Supreme Court's holding in *Dabney v. Home Ins. Co.*, 643 S.W.2d 386, 387 (Tex.1982). In *Dabney v. Home Ins. Co.*, the petitioners sued Home Insurance Company ("Home") for damages under the uninsured motorist provision of a policy issued by Home and were awarded damages by the trial court. 643 S.W.2d 386, 387 (Tex.1982). Home urged that it was entitled to reduce the judgment by the sums already paid to petitioners in PIP benefits. *Id.* at 389. The supreme court held:

> In *Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679 (Tex.1974), we held an insurer is not entitled to set off payments under medical payments coverage against claims made under uninsured motorist coverage. PIP coverage under the standard automobile insurance policy is comparable to medical payments coverage in that both are no-

fault and pay for similar expenses. Therefore, the trial court properly refused to reduce the judgment against Home by the amounts previously paid petitioners under the PIP coverage of the automobile insurance policy.

Nationwide contends that because the *Dabney* court relied on the *Westchester Fire* decision, we must look to *Westchester Fire* to determine the intended breadth of the *Dabney* holding. Nationwide concludes that because the *Westchester Fire* court only held the offset provision was ineffective to the extent it reduced the uninsured motorist protection below the minimum limits required by Article 5.06–1, an offset provision is effective so long as it does not reduce UM protection below the minimum limits set by the legislature. *See Westchester Fire*, 512 S.W.2d at 685. We disagree.

The supreme court in *Dabney* did not consider whether offsetting the PIP benefits against the uninsured motorist protection would reduce the UM protection to an amount less than the minimum limits set by the legislature. In fact, unlike the *Westchester Fire* decision, the opinion in *Dabney* does not even set forth what the limits of coverage were to enable us to determine whether the offset would have reduced the protection below the minimum limits. *Compare Westchester Fire*, 512 S.W.2d at 680, 685 *with Dabney*, 643 S.W.2d at 387–390. The effort, therefore, to limit the *Dabney* holding in this manner basically ignores what the opinion says. Other jurisdictions are split on whether similar limitation of liability clauses in insurance policies are valid. *See generally* A.S. Klein, Annotation, *Uninsured Motorist Insurance: Reduction of Coverage by Amounts Payable Under Medical Expense Insurance*, 24 A.L.R.3d 1353 (1969). To hold that the opinion in *Dabney* is necessarily limited by the holding in *Westchester Fire* prematurely decides that the supreme court was not persuaded by the various reasons

---

**3.** PIP insurance coverage is a type of no-fault insurance designed to cover the immediate expenses associated with physical injuries due to an auto accident. *Creighton v. Fidelity & Cas. Co. of New York*, 581 S.W.2d 815, 816 (Tex.Civ. App.—Fort Worth 1979, no writ). UM coverage

is designed to protect persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. TEX. INS. CODE ANN. art. 5.06–1(1) (Vernon 1981); *Stracener v. United Services Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex.1989).

given for invalidating similar offsetting provisions in other jurisdictions. Therefore, following the holding in *Dabney*, the trial court properly refused the offset in this case.

 Finally, we agree with Gerlich that the PIP benefits should be treated as a collateral source. Legally speaking, an uninsured motorist carrier stands in the same shoes as the uninsured motorist. *See Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Anchor Cas. Co. v. Robertson Transport Co.*, 389 S.W.2d 135, 139 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). The carrier is entitled to the same defenses and is liable for the same wrongdoing as the uninsured motorist. In this case, for example, Nationwide would be entitled to use Gerlich's own negligence as a defense to Gerlich's claim just as the "wrongdoing" uninsured motorist could.

When Nationwide stepped into the shoes of the "wrongdoing" uninsured motorist, it became the "wrongdoer" for purposes of the collateral source rule. Nationwide's stance as the "wrongdoer" for purposes of the UM benefits is distinct from its stance as an insurer paying documented PIP benefits. Given the unique posture of Nationwide in this situation, we hold that the PIP benefits became a collateral source.

### CONCLUSION

Nationwide failed to demonstrate that Gerlich would receive a double recovery if the PIP benefits she was paid were not offset against the amount she received in settlement of her claim under the UM coverage provision. In addition, the Texas Supreme Court has held that such an offset is not available in *Dabney v. Home*. Therefore, the trial court did not err in refusing to allow such an offset, and the trial court's judgment is affirmed.

Dissenting Opinion by ANGELINI, J., joined by GREEN and DUNCAN, JJ.

RICKHOFF, J., concurring in the judgment only.

ANGELINI, Justice, dissenting.

I respectfully dissent from the majority's opinion for two reasons. First, I believe the parties have clearly stipulated that Gerlich's total damages amounted to $3,500.00. Secondly, I believe the insurance policy provision which allows UM payments to be offset by PIP payments is valid and entitles Nationwide to an offset in this case.

### Factual and Procedural Background

In March of 1995, appellee, Catherine Gerlich suffered physical injuries when the car she was driving was hit by a car driven by an uninsured motorist. At the time of the collision, Gerlich was covered by a personal automobile liability policy issued by appellant, Nationwide Mutual Insurance Company. The policy in question included provisions for personal injury protection ("PIP") and for uninsured/underinsured motorist ("UM") coverage. The policy also included a limit of liability provision, the stated purpose of which is to prevent the insured from recovering benefits exceeding actual damages. The provision is as follows:

> In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverage, [Nationwide] will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

Gerlich made a claim under her policy with Nationwide and, in April of 1995, Nationwide paid Gerlich a total of $2,208.72 in PIP benefits. Following this payment, Gerlich and Nationwide settled Gerlich's personal injury claim for a total amount of $3,500.00. Nationwide asserted that, under the terms of the policy's limit of liability provision, it was entitled to credit the $3,500.00 settlement amount with the amount of the PIP benefits already paid to Gerlich. Thus, Nationwide paid Gerlich $3,500.00 less $2,208.72 to settle Gerlich's claim. Gerlich, on the other hand, contended that she was entitled to receive the full $3,500.00 in addition to the $2,208.72 she had already received in PIP benefits, despite the parties' agreement that her actual damages did not exceed $3,500.00. Gerlich filed suit against Nationwide for breach of contract. The case was tried to the bench under stipulated facts. The trial court refused to enforce the limit of liability provision

and determined that Nationwide was not entitled to a credit.

## Arguments and Authorities

### A. Settlement Amount v. Total Actual Damages

The majority's opinion is partially based on the contention that, because the parties stipulated to a *settlement amount* of $3,500.00 rather than *actual damages* of $3,500.00, there can be no double recovery and the offset provision is, therefore, not applicable to the facts of this case. However, this contention, raised by the majority, was neither advanced nor addressed by the parties either in the trial court or on appeal. A review of the record shows the parties stipulated that Gerlich's actual total damages amount to $3,500.00.

This case was tried before the court and was based on Stipulated Findings of Fact. No evidence was presented to the court, and the Reporter's Record consists only of counsels' arguments. The pertinent portions of the Stipulated Findings of Fact are:

6. Nationwide has paid a total of $2,208.72 in PIP benefits to Catherine Gerlich. These PIP benefits were properly owed by Nationwide under Policy No. 78 A 065324. Gerlich has received no other payments, either from Nationwide or anyone else, for her damages resulting from the collision in question.

7. A settlement was reached between Gerlich and Nationwide under the Uninsured/Underinsured Motorist Coverage for the total amount of $3,500.00. Nationwide contends that it is entitled to a credit for the amount of the PIP benefits paid to Gerlich by Nationwide. Gerlich's position is that Nationwide is not entitled to this credit.

8. Without a credit, Gerlich will receive $3,500.00 under the Uninsured/Underinsured Motorist Coverage of Policy No. 78 A 065324, in addition to the $2,208.72 she has received in PIP benefits. With a credit, Gerlich will received [sic] $1,291.28 under the Uninsured/Underinsured Motorist Coverage of Policy No. 78 A 065324, in addition to the above-referenced PIP amount, equaling a total of $3,500.00.

The statements made by counsel in the trial court indicate the parties were in absolute agreement that Gerlich's total actual damages were $3,500.00 and that the only issue for the trial court to resolve was whether the offset provision was valid.

At the beginning of the hearing, one of Gerlich's attorneys defined the issue as whether "an insurer [can] take credit for PIP payments for an insured that is involved in an incident. Because here we do not have a passenger or a guest." At one point in the hearing, however, the trial judge began to question the parties on the issue of whether the $3,500.00 payment had been broken down so it could be determined what elements of damages it included. It is clear that the trial court was concerned with the very issue the majority has addressed—whether there can be double recovery when it is uncertain what elements of damages the $3,500.00 payment by Nationwide to Gerlich included. Gerlich's attorney responded that it had not been broken down, but he did not argue that the failure to define what elements were included was determinative of whether the offset would be allowed. Instead, Gerlich's attorneys argued that the offset was in violation of and inconsistent with the insurance statutes pertaining to PIP and UM and, therefore, the offset provision was invalid.

The trial court again questioned whether the settlement had been broken down to indicate what elements of damages were included. Nationwide's attorney responded, "There hasn't been any settlement, Judge. We've just got a stipulated set of facts. They agree—[Gerlich's attorney] agreed with the representative of Nationwide, yeah, here is what it would take, just the same as in *James,* here is what she's entitled to." Gerlich's attorney expressed no disagreement with this statement. Nevertheless, the trial court again asked how he could tell whether there was double recovery if the amount paid by Nationwide was not broken down into elements of damages. Nationwide's attorney responded that Gerlich's attorney would not be doing his job had he not settled for all elements of damages, at which point Gerlich's

attorney confirmed that the amount paid was $3,500.00. The discussion continued with Nationwide's attorney stating that the parties had stipulated to Gerlich's total damages which included medical bills and lost wages that were paid under PIP. At no point in the discussion did Gerlich's attorneys disagree with this statement or argue that the stipulation was for anything other than Gerlich's total damages.

Following this discussion, the hearing continued regarding the merits of the offset. At this point, the record reflects that the parties, and even the trial judge, were proceeding under the assumption that the parties were in agreement as to Gerlich's total damages. The hearing ended, as it had begun, with argument regarding whether Gerlich's status as a driver rather than as a passenger was determinative of the offset issue.

Although the trial court gave Gerlich's attorneys several opportunities to seize upon the issue as he initially defined it—whether the settlement *actually included all elements of damages, thereby giving Gerlich a double recovery—they declined to do so. In making* his ruling, the trial judge stated:

> "Let me just say, for the record, that, based upon the argument and the cases that the Court has stated, that the court is inclined to believe in this particular matter, under the cases cited by the Supreme Court, conflicts in the Court of Appeals regarding arguments, that there is no offset allowed against PIP when he is a driver—just to get real specific—when he's a driver under their own policy, so we can get it real specific. Because I don't think that that's even been settled in Houston."

Thus, it is clear the trial court made its ruling based on the driver versus passenger issue rather than on the settlement versus total damages issue. In fact, the only reason the settlement/total damages issue was mentioned in the trial court was because the trial judge himself injected the issue. The par-

ties, however, consistently indicated that the total damage amount was not the issue. Further, the parties have briefed and orally argued the case on the assumption that Gerlich's total damages were $3,500.00.[1]

Had our review of this case been based simply upon the Stipulated Findings of Fact, without a Court Reporter's Record, then the majority's contention would be more compelling. However, we have a record, briefs, and argument which clearly indicate that the parties agreed, not only that $3,500.00 was paid in settlement, but also that Gerlich's total damages amounted to $3,500.00. This is supported by the fact that Gerlich's original petition recites that the parties reached a settlement "in the amount of $3,500 for *the injuries and damages which plaintiff suffered.*" Such a statement constitutes a judicial admission that Gerlich suffered damages in the amount of $3,500.00. *See Rao v. Rodriguez,* 923 S.W.2d 176, 181 (Tex.App.—Beaumont 1996, no writ). The majority's finding is in derogation of the parties' agreement.

## B. Propriety of the Offset

Nationwide contends that the disallowance of a credit against the total settlement amount for PIP benefits it already paid results in a double recovery for Gerlich. Gerlich had recovered $2,208.72 from Nationwide under the PIP provision of her policy when the parties settled for $3,500.00. If the requested credit is applied, Gerlich is entitled to receive an additional $1,291.28 under the UM provision of her policy, resulting in a total recovery to Gerlich of $3,500.00, the amount of her actual damages. Nationwide argues that, if the credit is not allowed, Gerlich receives a total payment of $5,708.72, an amount that exceeds her actual damages by $2,208.72.

Gerlich, on the other hand, argues that the trial court was correct in refusing to enforce the policy's limit of liability provision because Gerlich had contracted for both PIP and UM

---

1. It is interesting to note that the terms of the insurance contract at issue indicate, in part, that Nationwide would pay all *damages* not paid or payable under PIP coverage. Therefore, in order for Gerlich to be entitled to payment under the contract, either with or without the PIP offset,

she would be required to prove she suffered damages in the amount sought. Accordingly, the $3,500 settlement amount must be an admission of damages; otherwise, Gerlich would be entitled to nothing under the contract.

coverage and, therefore, is legally entitled to collect under both regardless of the amount of her actual damages. Gerlich points out that the Texas Supreme Court decided this offset issue in favor of the insured in *Dabney v. Home Ins. Co.*, 643 S.W.2d 386 (Tex.1982). In *Dabney*, passengers of an insured were injured when the insured's car ran off of the road during a race with an uninsured motorist. The insurer argued that it was entitled to reduce the trial court's judgment against it by the sums previously paid under the PIP provision of the policy in question. The court noted its holding in *Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679 (Tex. 1974), in which it held that an insurer was not entitled to offset payments for medical payment coverage against claims made under UM coverage. *Dabney*, 643 S.W.2d at 389. The *Dabney* court likened medical payment coverage to PIP coverage and held that the insurer was not entitled to reduce the judgment against it by the amount previously paid under the PIP provision of the policy. *Id.*

I disagree with Gerlich's arguments and do not read *Dabney* as broadly as Gerlich suggests. The *Dabney* court relied on its decision in *Westchester Fire* in holding that the trial court did not err in denying an offset. *Dabney* 643 S.W.2d at 389. Therefore, we should look to *Westchester Fire* in order to determine the intended breadth of the *Dabney* holding. In *Westchester Fire*, the court held that the offset provision was not effective "to the extent that it reduces the uninsured motorist protection below the minimum limits required by Article 5.06–1." *Westchester Fire*, 512 S.W.2d at 686. Based upon this language, an offset provision is effective as long as it does not reduce UM protection below the minimum limits set by the Legislature. Therefore, I interpret *Dabney* to prohibit offsets of UM coverage for PIP coverage already paid only in situations in which such an offset results in UM coverage below the statutory minimum.

It should be noted that the limit of liability provision at issue in this case is different from the one addressed in *Westchester Fire*. The provision in *Westchester Fire* called for an offset directly from UM coverage. Fol-

lowing the *Westchester Fire* decision, the State Board of Insurance redrafted the limit of liability language to be used in Texas insurance contracts. The new provision calls for an offset from actual damages. It is this new provision that is at issue in this case. Because the limit of liability provision in Gerlich's policy does not call for a credit against UM benefits as the provision in *Westchester Fire* did, but, instead, requires that the offset be made from actual damages, it does not affect the amount of UM coverage, and is, therefore, effectual under the reasoning of *Westchester Fire*.

For example, in this case, the PIP payment amount is deducted from the $3,500.00 actual damages amount instead of from the $100,000.00 UM coverage amount. The amount of damages outstanding once the credit is made, is then covered under the UM provision of the policy. Accordingly, the amount to be recovered under the UM provision of the policy is affected, but the UM coverage amount itself is not affected. In cases in which actual damages exceed the available UM coverage even after a credit for PIP benefits paid has been made, the insured is entitled to both UM limits and PIP payments. However, in situations in which actual damages are lower than the available UM coverage, as in the present case, the insured will not receive UM coverage limits. In all cases, though, the insured is made whole through her receipt of the total amount of actual damages. Consequently, I conclude that a narrow reading of *Dabney* in light of *Westchester Fire* is correct.

In addition to her reliance on *Dabney*, Gerlich contends that the denial of an offset is dictated by statute. The Texas Insurance Code provides that the purpose of UM coverage is to protect persons "who are legally entitled to recover damages from owners or operators of uninsured or under insured motor vehicles." TEX. INS.CODE ANN. art. 5.06–1(1) (Vernon 1981). Gerlich contends that to allow Nationwide a credit for PIP coverage would result in the denial of what she would have recovered if the uninsured motorist who hit her had been insured. Gerlich notes that an insurance carrier that pays PIP benefits to an insured has no right to subrogation if

the insured also recovers from the negligent party's insurance carrier. TEX. INS.CODE ANN. art. 5.06–3(c); *see Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Accordingly, if the uninsured motorist in this case had been insured, Gerlich would have been entitled to $3,500.00 from the negligent driver in addition to the total amount of PIP benefits paid from Nationwide. Therefore, Gerlich argues that, if the purpose of the UM provision of her policy is to place her in the position she would have been in had the driver who hit her been insured, no credit can be allowed.

Contrary to Gerlich's assertion, the uninsured motorist provision of the Texas Insurance Code does not guarantee that UM coverage is an exact substitute for liability coverage. The statute simply establishes that UM coverage is *for the protection* of persons who are legally entitled to recover damages from uninsured or underinsured motorists. *See* TEX. INS.CODE ANN. art. 5.06–1(1)(Vernon 1986). When the UM provision of an insurance policy, either alone or in conjunction with another provision of the same policy, operates to cover an insured for her actual damages, the insured has been protected as contemplated by the statute.

Further, Gerlich's attempt to apply the collateral source doctrine against Nationwide is misplaced. Under the collateral source doctrine, an injured party is permitted to recover from the wrongdoer all damages proximately caused by the wrongdoer's actions without regard to whether the injured party has recovered damages for the same injuries from another source. RESTATEMENT (SECOND) OF TORTS § 920A (1982). The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *Brown*, 601 S.W.2d at 934. If payment is within the collateral source rule, the principle forbidding a double recovery for the same loss is not applicable. *Id.* at 936.

This, however, is not a case that falls within the collateral source rule. First, there is no wrongdoer involved in this dispute. Therefore, we are not concerned with a wrongdoer receiving a credit to which it is not entitled by virtue of having caused the injuries in question. More importantly, there are no benefits coming from a collateral source in this case. Any recovery received under the PIP provision or the UM coverage provision of Gerlich's policy comes from Nationwide. Because the collateral source rule does not apply in this context, the principle against double recovery stands. Accordingly, Gerlich is entitled to recover only her actual damages from Nationwide.

This interpretation of *Dabney* and the insurance code is also consistent with public policy against insureds receiving benefits in excess of actual damages. Public policy mandates that an insured be fully compensated, to the extent of insurance policy limits, for all damages incurred. An insured is not, however, entitled to recover more than her actual damages simply because the total amount of her insurance coverage exceeds the amount of those damages. This is particularly true where the insurance contract expressly and clearly provides that the insured is not entitled to double recovery.

In a different context, the supreme court addressed this policy and held that where an insured is covered by two automobile insurance policies, liability on the policies is joint and several *to the extent of the insured's actual damages*. *See American Motorists Ins. Co. v. Briggs*, 514 S.W.2d 233, 236 (Tex.1974)(emphasis added). In other words, an insured may not recover actual damages twice simply because she happens to have two automobile insurance policies. *See id.* Likewise, public policy against double recovery is frustrated when an individual is permitted to recover under two separate provisions of a single policy if such recovery results in the total amount of benefits received exceeding the amount of actual damages incurred.

"An insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss." *State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150, 156 (Tex.App.—Houston [1st Dist.] 1994, no writ)(see cases cited). The insurance car-

rier's liability, as in any contractual relationship, is defined by the terms of the contract. *See id.* at 157. The terms of the coverage for which Gerlich contracted provide that "to prevent the insured from recovering insurance payments in excess of actual damages sustained," any amount paid under the PIP provision of her policy would be credited against any recovery sought under the UM provision of her policy. Therefore, Gerlich was on notice, by the very terms of the contract at issue, that she would be covered under the policy only to the extent of her actual damages. The fact that Gerlich paid premiums for both PIP and UM coverage, insures her additional coverage in the event that she incurs damages in excess of her UM coverage. It does not require that she receive duplicate benefits under both provisions. Such a requirement would fly in the face of established principles of insurance and contract law. I would, therefore, conclude that Gerlich is bound by the terms of the insurance policy she contracted for.[2]

Accordingly, I would reverse the judgment of the trial court and render judgment that Nationwide is entitled to credit the amount due under the uninsured/under insured motorists provision of Gerlich's policy by the amount already paid under the personal injury protection provision of the same policy.

---

**2.** I note that both the Dallas Court of Appeals and the Texas Insurance Commissioner have recently considered this issue and have concluded that similar limit of liability provisions are valid. *See Kim v. State Farm Mut. Auto. Ins. Co.,* 966 S.W.2d 776, 779 (Tex.App.—Dallas, n.w.h.); Tex. Dept. of Ins., *Request for Relief Pursuant to Article 5.11, Insurance Code Relating to the Grievance Filed by Fermin Ramos,* Docket No. 2301 (November 18, 1997).