MID–CENTURY INSURANCE
COMPANY OF TEXAS,
Petitioner,

v.

Jack KIDD, Respondent.

Nationwide Mutual Insurance
Company, Petitioner,

v.

Catherine Gerlich, Respondent.

Nos. 98–0800, 98-1024.

Supreme Court of Texas.

Argued March 4, 1999.

Decided July 1, 1999.

Steven L. Hughes, Kurt G. Paxson, James A. Martinez, El Paso, for Petitioner Mid-Century Ins. Co. of Texas.

Evelina Ortega, Mara Asya Blatt, El Paso, for Respondent Kidd.

Melvin A. Krenek, Andrew Robert Kunau, San Antonio, Steven L. Hughes, Kurt G. Paxson, El Paso, for Petitioner Nationwide Mut. Ins. Co.

Fidel Rodriguez, Jr., Larry Zinn, San Antonio, Mara Asya Blatt, El Paso, for Respondent Gerlich.

Justice GONZALES delivered the opinion for a unanimous Court.

These two cases present a common question: can an insured recover the same loss under both the uninsured/underinsured motorist (UM/UIM) and personal injury protections (PIP) of a standard automobile insurance policy? Two courts of appeals answered yes and refused to enforce a policy provision barring duplication of UM and PIP benefits that would result in double recovery.[1] We hold that a non-duplication-of-PIP-benefits provision in an automobile insurance policy is valid and enforceable. Accordingly, we reverse the judgments of the courts of appeals and remand these cases to their respective trial courts for further proceedings.

Jack Kidd was injured in a vehicle collision caused by an uninsured motorist running a red light. Mid–Century Insurance Company, Kidd's insurance carrier, paid Kidd $10,000 in PIP benefits. After settlement negotiations for UM benefits broke down, Kidd sued Mid–Century. A jury found that Kidd suffered $13,000 in past medical expenses and no other damages. Mid–Century moved for a judgment of $2,070—Kidd's $13,000 in damages less

$10,000 paid under PIP and $930 paid to another doctor. The trial court granted the $930 offset but denied the $10,000 PIP offset and rendered a judgment for $12,070 plus pre- and post-judgment interest. The court of appeals affirmed.[2]

Catherine Gerlich was also injured in a vehicle collision caused by an uninsured motorist. Nationwide Mutual Insurance Company, Gerlich's insurance carrier, paid Gerlich $2,208.72 in PIP benefits and orally agreed to settle her UM claim for $3,500. But Nationwide tendered Gerlich only $1,291.28, asserting that it could offset the $3,500 settlement amount by the $2,208.72 it had paid in PIP benefits. Gerlich sued Nationwide for breach of contract. Following a bench trial on stipulated facts, the trial court rendered judgment for Gerlich, holding that Nationwide was not entitled to a PIP credit. A divided court of appeals, sitting en banc, affirmed.[3]

In affirming the trial courts' judgments, the *Kidd* opinion and the *Gerlich* plurality opinion concluded that the following UM/UIM provision, found in all standard Texas motor vehicle policies, was unenforceable:

In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

Both courts held that this offset was inconsistent with the UM/UIM and PIP statutes[4] and violated our holding in *Dabney*

**1.** See *Nationwide Mut. Ins. Co. v. Gerlich,* 982 S.W.2d 456 (Tex.App.—San Antonio 1998) (en banc); *Mid–Century Ins. Co. v. Kidd,* 974 S.W.2d 848 (Tex.App.—El Paso 1998).

**2.** See *Kidd,* 974 S.W.2d at 850.

**3.** See *Gerlich,* 982 S.W.2d at 459. Three justices joined in the plurality opinion, three

justices dissented, and one concurred in the judgment.

**4.** See TEX. INS.CODE art. 5.06–1 (providing for and regulating UM/UIM coverage); TEX. INS. CODE art. 5.06–3 (providing for and regulating PIP coverage).

*v. Home Insurance Co.*[5] In contrast, three other courts of appeals, recently pressed with the same arguments, have upheld the same offset provision.[6] We granted the petitions in *Gerlich* and *Kidd* to resolve this conflict among the courts of appeals.

## I

Kidd and Gerlich contend that the PIP offset provision contravenes the text, purpose, and intent of the UM and PIP statutes. We begin our analysis with an overview of those statutes.

In 1967, the Legislature enacted Insurance Code article 5.06–1 to mandate that all automobile insurance policies provide uninsured motorist protection.[7] The Legislature amended the statute in 1977 to also require underinsured motorist protection.[8] Under the statute, UM/UIM coverage must give insureds limited protection from bodily injuries and property damage caused by financially irresponsible motorists:

> [C]overage is provided ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom.[9]

Currently, the statute sets the minimum limits of UM/UIM liability at $20,000 per person and $40,000 per accident for bodily injury and at $15,000 per accident for property damage.[10] An insured may decline UM/UIM coverage and not have to pay premiums for it, but must do so in writing.[11]

In 1973, the Legislature enacted Insurance Code article 5.06–3 to require all automobile liability insurance policies to offer PIP coverage.[12] PIP gives a minimum of $2500 coverage to any covered person—the insured, members of the insured's household, and occupants of the insured's vehicle—for reasonable medical expenses and lost wages that result from an accident.[13] PIP coverage, unlike UM/UIM coverage, is a form of no-fault insurance:

> The benefits required by this Act shall be payable without regard to the fault or non-fault of the named insured or the recipient in causing or contributing to the accident, and without regard to any collateral source of medical, hospital, or wage continuation benefits.[14]

PIP's limitation to medical expenses and lost wages, along with its collateral-source and no-fault features, are designed to sim-

---

**5.** 643 S.W.2d 386 (Tex.1982).

**6.** *See Laurence v. State Farm Mut. Auto. Ins. Co.,* 984 S.W.2d 351, 356 (Tex.App.—Austin 1999, pet. filed); *State Farm Mut. Auto. Ins. Co. v. Brown,* 984 S.W.2d 695, 700 (Tex. App.—Houston [1 st Dist.] 1998, pet. filed); *Kim v. State Farm Mut. Auto. Ins. Co.,* 966 S.W.2d 776, 779 (Tex.App.—Dallas 1998, no pet.) (all holding that insurance carriers may enforce the standard PIP offset provision); *see also James v. Nationwide Property & Cas. Ins. Co.,* 786 S.W.2d 91, 94 (Tex.App.—Houston [14 th Dist.] 1990, no writ) (holding that Texas Insurance Code article 5.06–3(h) entitled insurers to offset UM payments to automobile passengers by paid PIP benefits).

**7.** *See* Act of May 3, 1967, 60 th Leg., R.S., ch. 202, § 1, 1967 Tex. Gen. Laws 448–49.

**8.** *See* Act of May 6, 1977, 65 th Leg., R.S., ch. 182, § 1, 1977 Tex. Gen. Laws 370–71.

**9.** Tex. Ins.Code art. 5.06–1(1).

**10.** *See id.* art. 5.06–1(3), (4)(a) (stating that UM/UIM overage may not be offered in amounts less than those prescribed in the Texas Motor Vehicle Safety–Responsibility Act for liability); Tex. Transp. Code § 601.072 (prescribing minimum liability coverage of $20,000 per person and $40,000 per accident for bodily injury and $15,000 for property destruction).

**11.** *See* Tex. Ins.Code art. 5.06–1(1).

**12.** Act of April 10, 1973, 63 rd Leg., R.S., ch. 52, § 1, 1973 Tex. Gen. Laws 90–92.

**13.** *See* Tex. Ins.Code art. 5.06–3(b),(g).

**14.** *Id.* art. 5.06–3(c).

plify and hasten claim resolution and payment.

## II

Over the years, questions have been raised about whether an insured may aggregate or "stack" coverages under different provisions of the same policy or under multiple policies. The Texas Department of Insurance [TDI] has approved various provisions to offset amounts recoverable under one policy or policy provision by amounts received under other policies or policy provisions. This Court has previously struck down many offset provisions for being inconsistent with the express requirements and purposes of the UM/UIM statute. But none of these cases involved the exact question here.

In *American Liberty Insurance Co. v. Ranzau,*[15] for example, we struck down an "other insurance" clause that prevented claimants from stacking coverages under multiple policies. The Ranzaus' daughter suffered $50,000 in damages after an insured vehicle in which she was a passenger was struck by an uninsured motorist. The Ranzaus recovered $10,000 in UM benefits from the vehicle owner's insurer and sought to recover $10,000 more in UM benefits under their own policy. The Ranzaus' insurer invoked the policy's "other insurance" clause, which purported to reduce its own policy limits by the policy limits of any other available insurance policy, to deny any recovery. We held that this was invalid. "[T]o permit one policy, or the other, to be reduced or rendered ineffective by a liability limiting clause would be to frustrate the insurance benefits which the statute sought to guarantee and which were purchased by the respective insureds."[16]

In *American Motorists Insurance Co. v. Briggs,*[17] we again rebuffed an insurer's attempt to enforce the "other insurance" clause struck down in *Ranzau.* The Briggs were riding in their employer's truck when it was struck by a hit-and-run driver. Thomas and JoJean Briggs sustained $11,230.39 and $6,115.95 in damages, respectively. They each settled with the employer's insurer for $5,750 and sought to recover the difference under the UM provisions of their own policy. American Motorists acknowledged that under *Ranzau* it could not escape liability altogether—that is, by reducing its own policy limits by an amount equal to the employer's policy limits. But it argued that *Ranzau* did not invalidate language in the "other insurance" clause stating that "[t]he insurance ... shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance."[18] Under this language, American Motorists argued that it was liable for sums only in excess of $10,000—the employer's policy limits—even though the Briggs settled their claims with the employer's insurer for less than the policy limits. We rejected this argument, holding that the UM statute "preclud[ed] the use of 'other insurance' clauses to limit the recovery of actual damages caused by an uninsured motorist."[19] We concluded that "[i]f coverage exists under two or more policies, liability on the policies is joint and several to the extent of plaintiff's actual damages, subject to the qualification that no insurer may be required to pay in excess of its policy limits."[20]

In *Westchester Fire Insurance Co. v. Tucker,*[21] we held that an offset provision could not be used to reduce the UM policy limits by amounts paid or payable under

**15.** 481 S.W.2d 793 (Tex.1972).

**16.** *Id.* at 797.

**17.** 514 S.W.2d 233 (Tex.1974).

**18.** *Id.* at 236.

**19.** *Id.* (quoting *Ranzau,* 481 S.W.2d at 797)(emphasis and internal quotation marks omitted).

**20.** *Id.*

**21.** 512 S.W.2d 679, 685–86 (Tex.1974).

medical expense coverage. The offset provision stated that "[t]he company shall not be obligated to pay under this [UM] Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under [the part of the policy relating to medical expense coverage]."[22] We held that the policy provision was "ineffective to the extent that it reduces the uninsured motorist protection below the minimum limits required by" the UM statute.[23] Therefore, we allowed an accident victim who suffered more than $36,000 in damages to stack her policy's UM and medical expense coverages to obtain a total recovery of $16,000.[24]

All three cases—*Ranzau, Briggs,* and *Tucker*—stand for the proposition that offsets in the UM/UIM section of the policy are ineffective to the extent that they prevent recovery of actual damages or reduce UM protection below the minimum limits required by the UM statute. But none of these cases endorse the proposition advanced by Kidd and Gerlich that offsets are ineffective even if they prevent only excess recoveries. On the contrary, *Briggs*'s holding that multiple carriers are jointly and severally liable to an insured to the extent of actual damages implies that the UM/UIM statute does not entitle insureds to recoveries in excess of their actual damages.

### III

Of the foregoing cases, *Tucker* is the most analogous case to this one. PIP coverage is similar to medical payments coverage in that both are no-fault and cover similar expenses.[25] *Tucker* involved a medical payments offset provision simi-

lar, in some respects, to the PIP offset provision challenged here. But there are significant differences in the intended application of the two provisions.

The insurer in *Tucker* construed the medical payments offset provision to reduce the policy limits applicable to UM coverage (in that case, $10,000) by the amount paid or payable under medical expense coverage ($6,000)—to $4,000. Stated another way, the insurer insisted that it was obligated to pay at most $10,000 in combined UM and medical-expense benefits, even though the combined limits of UM and medical-expense protections were $16,000.[26] Without deciding whether the provision could be validly construed that way, we rejected the insurer's offset claim on statutory grounds.[27]

Here, by contrast, Mid–Century and Nationwide seek to subtract the PIP benefits it paid Kidd and Gerlich from their respective actual damages. They contend that the PIP offset clause operates only to withhold "insurance benefits in excess of actual damages sustained." They argue that their provision would not interfere with stacking of PIP and UM/UIM coverages to the extent warranted by the insured's actual damages. Therefore, they claim, it does not offend the principles set forth in *Ranzau, Briggs,* or *Tucker.*

■ Before we can consider the parties' contentions about the validity of the PIP offset provision, we must first construe the exact scope of the PIP offset provision. Does the provision really, as Mid–Century and Nationwide insist, simply limit the insured's UM/UIM recovery to the lesser of (1) the UM/UIM policy limits or (2) actual damages less benefits paid or payable under PIP? Three important features of the PIP offset provision [28]—the preamble, the

---

22. *Id.* at 682 n. 1.

23. *Id.* at 686.

24. *See id.* at 680.

25. *See Dabney,* 643 S.W.2d at 389.

26. *See Tucker,* 512 S.W.2d at 685.

27. *See id.*

28. The offset provision is located in the section of the policy relating to UM/UIM protection.

operating language, and the policy limitation—suggest that it does.

First, the preamble expresses the intent to withhold only "payments in excess of actual damages sustained." Second, the operative language states that the carrier will pay "all covered damages not paid or payable under ... Personal Injury Protection Coverage." Covered damages is defined, without any reference to the policy limits, as "damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident." Also, the language "paid or payable" indicates that the offset can be applied before—and in anticipation of—any PIP payments, so that the same result obtains regardless of what benefits—PIP or UM/UIM—the insured first applies for. Third, the offset provision provides that the carrier's ultimate UM/UIM liability is subject to the policy limits.

Analyzing these three elements together, we construe the PIP offset provision as a nonduplication provision. To the extent UM/UIM-covered damages do not overlap with PIP-covered damages—for example, damages proximately caused by the insured's own negligence—there is no corresponding PIP credit.[29] Also, the policy limits are applied after—not before—deducting the PIP credit. If an insured's actual damages less PIP credits exceed her UM/UIM policy limits, then the insured recovers the maximum possible UM/UIM benefits.[30]

Accordingly, the only effect of the PIP offset provision is to bar double recoveries. It does not prevent stacking of UM and PIP protections to cover actual damages. Therefore, the offset provision neither reduces the UM/UIM policy limits nor causes an insured to recover less than actual damages sustained.

## IV

Understanding the distinction between the PIP offset provision here and the offset provisions rejected in *Ranzau, Briggs,* and *Tucker,* we turn to the main question presented. Does the PIP offset provision in the standard Texas personal auto insurance policy violate the insured's rights under statute, common law, or contract, and is it inconsistent with our holding in *Dabney?*

■ We approach this analysis mindful of the fact that the Insurance Code does not completely define what conditions or limitations an automobile insurance policy may contain. Insurance Code article 5.06 mandates that the TDI adopt a policy form and endorsements for each type of motor vehicle insurance governed by Insurance Code articles 5.01 through 5.12.[31] Texas courts "are bound to interpret the statutes and TDI-approved policy provisions as written."[32] But policy provisions, even if TDI-approved, are invalid if they

29. For example, if a driver with $2,500 of PIP coverage was 50% at-fault in a collision with an uninsured motorist that resulted in $10,000 of bodily injury damages, there would no offset of the $5,000 UM/UIM award to which the driver would be entitled. Because we would attribute the $2,500 in PIP benefits to damages proximately caused by the driver's own negligence, the driver would recover a total of $7,500 under the two protections.

30. For example, a non-negligent accident victim with $50,000 damages, $20,000 of UM/UIM protection, and $2,500 of PIP protection would recover $22,500. Her "covered damages"—the amount she would be legally entitled to recover from the negligent motorist—would be $50,000. The PIP offset would reduce the amount to $47,500. The carrier would then pay (in addition to PIP benefits) the lesser of $47,500 and the $20,000 policy limits—for a total of $22,500. In this example, the offset accordingly has no effect.

31. *See* Tex. Ins.Code art. 5.06(1).

32. *Kemp v. Fidelity & Cas. Co.,* 512 S.W.2d 688, 690 (Tex.1974).

are inconsistent with express statutory requirements or purposes.[33]

### A

■ Kidd and Gerlich raise a number of statutory objections to the PIP offset. First, they argue that the UM/UIM statute is intended to be an exact substitute for the insurance the negligent motorist should have carried, even if it results in a double recovery. Several cases suggest that UM coverage is designed to place the injured party in the same position as if the uninsured motorist had been insured.[34] Also, article 5.06–1(5) states that "[t]he underinsured motorist coverage shall provide for payment to the insured of *all* sums," up to the policy limits, that the victim would be legally entitled to but cannot recover from the underinsured motorist.[35] Of course, article 5.06–1(5), strictly construed, applies only to UIM coverage. Kidd and Gerlich, however, insist that article 5.06–1(1) intends that the same measure of protection be available under UM coverage.[36] They contend that this statutory mandate—that UM/UIM benefits cover the full amount of the negligent motorist's liability—bars the PIP offset.

The PIP offset provision, however, does not prevent the insured from recovering "all sums" which he or she would be legally entitled to recover from the negligent motorist. Looking at the insurance policy as a whole, instead of in discrete subsections, the insured recovers everything contemplated by the UM statute. The PIP provision simply prevents the insured from aggregating those subsections to recover in excess of actual damages. If we construed the UM/UIM statute as guaranteeing an "all sums" recovery under policy's UM/UIM subsection alone, disregarding any other insurance benefits that the insured might receive, then an insured who purchased multiple policies could recover several times the amount of his losses. This, however, would conflict with *Briggs*, in which we stated that "[i]f coverage exists under two or more policies, liability on the policies is joint and several to the extent of plaintiff's actual damages."[37] We conclude that the PIP offset violates neither the purpose nor the "all sums" language of the UM/UIM statute.

■ Second, Gerlich argues that the PIP offset violates the PIP statute's collateral source rule. The PIP statute states that PIP benefits shall be paid "without regard to any collateral source of medical, hospital, or wage continuation benefits."[38] Gerlich argues that this means that she is entitled to her PIP benefits without regard to any potential UM/UIM recovery and without any subsequent offset. But Gerlich was paid her PIP benefits, as the statute requires. The statute does not guarantee that the collateral source of benefits will be undisturbed; it does not prevent an offset based on the amount paid or

---

**33.** *See id.; Ranzau*, 481 S.W.2d at 796–97.

**34.** *See, e.g., Simpson v. GEICO Gen. Ins. Co.*, 907 S.W.2d 942, 946 (Tex.App.—Houston [1 st Dist.] 1995, no writ); *Sikes v. Zuloaga*, 830 S.W.2d 752, 753 (Tex.App.—Austin 1992, no writ); *Greene v. Great Am. Ins. Co.*, 516 S.W.2d 739, 743 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.).

**35.** Tex. Ins.Code art. 5.06–1(5) (emphasis added).

**36.** *See id.* art. 5.06–1(1) (indicating UM/UIM coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles").

**37.** *Briggs,* 514 S.W.2d at 236. Similarly, the courts of appeals have generally refused to imply that an insured could obtain excess recoveries by stacking separate policies. *See, e.g., Travelers Indem. Co. v. Lucas,* 678 S.W.2d 732, 735 (Tex.App.—Texarkana 1984, no writ); *Employers Cas. Co. v. Sloan,* 565 S.W.2d 580, 585 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.); *Northwestern Mut. Ins. Co. v. Lawson,* 476 S.W.2d 931, 935 (Tex.Civ. App.—Tyler 1972, no writ); *Fidelity & Cas. Co. v. Gatlin,* 470 S.W.2d 924, 928 (Tex.Civ. App.—Dallas 1971, no writ) (all allowing stacking but indicating recovery would be capped at actual damages).

**38.** Tex. Ins.Code art. 5.06–3(c).

payable under PIP from being applied to that collateral source. Moreover, even if an insured had two PIP policies, this would not guarantee recovery under both, for in the words of one court, "recovery of P.I.P. benefits is limited to the actual loss sustained and there may be no double recovery even when two different policies provide the same coverage." [39]

■ Third, Gerlich argues that the offset violates the PIP statute's subrogation bar. The PIP statute bars subrogation of the covered person's claim against the negligent motorist in order to recover PIP benefits paid:

> An insurer paying benefits pursuant to this Act shall have no right of subrogation and no claim against any other person or insurer to recover any such benefits by reason of the alleged fault of such other person in causing or contributing to the accident.[40]

Gerlich argues that this provision bars an insurance carrier from recovering any part of the insured's UM/UIM claim, which the insured makes "by reason of the alleged fault of such other person in causing or contributing to the accident." But the subrogation bar only applies to claims "against any *other* person or insurer," not claims against itself by the same person under the same insurance policy.[41] There-

fore, the PIP subrogation bar is inapplicable to the PIP offset.

■ Kidd and Gerlich's fourth statutory argument is based on the doctrine of *expressio unius est exclusio alterius,* the maxim that the expression of one implies the exclusion of others. The UM and PIP statutes already specifically forbid double recoveries in two situations. The UM statute bars double recoveries under combined UM and collision coverage for property damages.[42] But it contains no similar double-recovery bar for bodily injuries. Also, the PIP statute entitles a carrier to an offset when a passenger attempts to recover both PIP and liability benefits from an owner or operator.[43] But it provides for no similar offset against UM benefits. In *Unigard Security Insurance Co. v. Schaefer,*[44] we held that "[w]hen specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply." Kidd and Gerlich argue that because the Legislature did not state other situations when insurers could get a PIP credit or prevent a double recovery, it made its intent clear that no other PIP credits or double-recovery bars shall apply. We disagree.

■ The two noted statutory offset provisions do not evince a legislative intent to mandate double recoveries in all but two

---

**39.** *United Servs. Auto. Ass'n v. DiCarlo,* 670 S.W.2d 756, 758 (Tex.App.—El Paso 1984, writ ref'd n.r.e.); *see also Creighton v. Fidelity & Cas. Co.,* 581 S.W.2d 815, 817 (Tex.Civ. App.—Fort Worth 1979, no writ) (holding that insured could not recover medical expenses twice under two different PIP policies).

**40.** TEX. INS.CODE art. 5.06–3(c).

**41.** *See Brown,* 984 S.W.2d at 699 (making the same distinction).

**42.** *See* TEX. INS.CODE art. 5.06–1(4)(b) (providing that when an insured has both UM and collision insurance, "[i]n no event shall the insured recover under both coverages more than the actual damages suffered").

**43.** Texas Insurance Code article 5.06–3(h) provides:

> When any liability claim is made by any guest or passenger described in paragraph (b) hereof against the owner or operator of the motor vehicle in which he was riding or the owner's or operator's liability insurance carrier, the owner or operator of such motor vehicle or his liability insurance carrier shall be entitled to an offset, credit or deduction against any award made to such guest or passenger in an amount of money equal to the amounts paid by the owner, operator or his automobile liability insurance carrier under "personal injury protection" as defined in this Act to such guests or passengers. . . .
>
> TEX. INS.CODE art. 5.06–3(h).

**44.** 572 S.W.2d 303, 307 (Tex.1978).

enumerated exceptions. The doctrine of *expressio unius est exclusio alterius* is simply an aid to determine legislative intent, not an absolute rule.[45] As a rule of reason and logic, it should not be mechanically applied to compel an unreasonable interpretation.[46]

The UM statute's bar of double recoveries of collision and UM/UIM benefits for property losses does not compel—explicitly or implicitly—double recoveries of PIP and UM/UIM benefits for personal injuries. Rather, the lack of statutory regulation of personal-injury double recoveries suggests that such matters are to be resolved by reference to the insurance contract, whose terms are promulgated by the TDI.

Also, article 5.06–3(h) reflects the Legislature's judgment that a passenger or guest—who neither paid any premiums nor was privy to the insurance contract—is not entitled to both a tort award against and PIP benefits from the driver of the vehicle in which she was riding. Article 5.06–3(h) simply does not apply to UM/UIM claims. Therefore, it does not imply that offsets against UM/UIM claims are invalid.[47]

We do not view these statutory offset provisions as reflecting an intent to favor double recoveries in situations not explicitly excluded. If the Legislature wanted to bar all other nonduplication provisions— nothing indicates that it did—it could have done so. Therefore, we conclude that the two noted statutory offset provisions prohibiting double recoveries in two specific situations do not undermine the legitimacy of other TDI-approved, no-double-recovery contract provisions.

**B**

▇▇▇▇ Gerlich also argues that the PIP offset violates the common law collateral source rule. The collateral source rule bars a wrongdoer from offsetting his liability by insurance benefits independently procured by the injured party.[48] Relying on the metaphor that the UM/UIM carrier steps into the shoes of the negligent motorist, Gerlich insists that the UM/UIM carrier is barred from offsetting its liability by PIP benefits the insured has already obtained.

This argument fails for several reasons. First, the PIP coverage is simply not a "collateral source" with respect to the UM coverage; the two are payable under the same policy. Second, the relationship between the UM/UIM carrier and the insurer is one of contract, not of tort or vicarious liability. Here, the primary justification of the collateral source rule—that a wrongdoer not become a third-party beneficiary of insurance benefits purchased by the victim—does not apply. Enforcing the offset will not benefit wrongdoers. Also, as a contracting party, not a third-party, the UM/UIM carrier is entitled to any valid benefit (e.g., an offset) of its agreement. Therefore, we conclude that the PIP offset provision does not violate the collateral source rule.

**C**

▇▇▇ Kidd and Gerlich also urge that because they paid two premiums, one for PIP and the other for UM/UIM coverage, they are entitled to the full benefits under each without respect to the other. They complain that if the PIP offset provision is enforced, then PIP benefits are nothing

45. *See Grothues v. City of Helotes*, 928 S.W.2d 725, 728 n. 4 (Tex.App.—San Antonio 1996, no writ).

46. *See Freeman v. Texas Compensation Ins. Co.*, 603 S.W.2d 186, 190 (Tex.1980).

47. *See Brown*, 984 S.W.2d at 699 ("Claims of *liability* by a passenger against a driver and his insurer are not the same type of claims as those of a driver or passenger against the driver's insurer for UM coverage.").

48. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 934–36 (Tex.1980) (holding that a wrongdoer cannot get credit for insurance independently procured by the injured party).

more than a refundable advance; in the end they paid for nothing.

First, we reject the argument that if the PIP offset were enforced, then no consideration would have been given in exchange for the PIP premiums. UM/UIM and PIP coverages are complementary and indemnify insureds against different risks. UM/UIM coverage indemnifies insureds against only those damages proximately caused by the other driver's negligence. PIP coverage, by contrast, also covers damages attributable to the insured's own negligence. Also, the policy's UM/UIM and PIP limits may be aggregated to the extent needed to compensate actual damages. In sum, PIP provides protection that UM/UIM does not. This additional coverage is consideration for the PIP premiums paid.[49]

Second, no evidence was presented that UM/UIM premiums were calculated without regard to the offset clause. On the contrary, the Insurance Commissioner, in an official order upholding the offset, has stated that the savings resulting from the offset are reflected in the rates established for UM/UIM coverage.[50]

Even assuming that the offset results in a net overcharge of UM and PIP premiums, the appropriate remedy would be for the TDI to adjust the benchmark rates to which such premiums must be tied.[51] In *Tucker*, we rejected a similar two-premium argument, noting that "the State Board of Insurance [now the Department of Insurance] is vested with 'sole and exclusive power and authority' to fix just, reasonable and adequate rates of premiums to be charged and collected by all insurers writing insurance on motor vehicles in this State."[52] For the same reason, we reject it again today.

### D

Finally, Kidd and Gerlich argue that the PIP offset provision is inconsistent with our holding in *Dabney v. Home Insurance Co.*[53] In *Dabney*, three passengers were injured when the driver, while racing another car, ran their car off of a public highway and crashed into a house.[54] The car that crashed was insured by Home Insurance Company. The driver of the other car was uninsured. The passengers filed liability and UM claims against Home based upon the negligence of their driver and the uninsured driver. The parties settled the liability claims for the policy limits and litigated the UM claims. The principal issues on appeal were whether the other driver's racing could be a proximate cause of the accident and how the jury's comparative negligence findings and the parties' pretrial settlement of the liability claims should be applied to the damage calculations.[55] In the course of answering these questions, the Court also addressed Home's contention that it should be able to offset the UM awards by amounts previously paid under PIP coverage:

> Home also urged that it is entitled to reduce the judgment by the sums already paid to petitioners under the PIP provision of Haynes' policy. In *Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679 (Tex.1974), we held an insurer was not entitled to set off payments under medical payments coverage against claims made under uninsured

---

**49.** *See also Brown*, 984 S.W.2d at 699 (addressing and rejecting a similar failure-of-consideration argument).

**50.** *See* Order of the Commissioner of Insurance, *Request for Relief Pursuant to Article 5.11, Insurance Code, Relating to the Grievance Filed By Fermin Ramos*, No. 97–1161, * 2 (Nov. 18, 1997).

**51.** *See* Tex. Ins.Code art. 5.101 § 3 (mandating that the TDI establish benchmark rates for automobile insurance premiums).

**52.** *Tucker*, 512 S.W.2d at 687.

**53.** 643 S.W.2d 386 (Tex.1982).

**54.** *See id.* at 387.

**55.** *See id.* at 388–90.

motorist coverage. PIP coverage under the standard automobile insurance policy is comparable to medical payments coverage in that both are no-fault and pay for similar expenses. Therefore, the trial court properly refused to reduce the judgment against Home by the amounts previously paid petitioners under the PIP coverage of the automobile insurance policy.[56]

*Dabney*'s discussion of Home's PIP offset claim—a minor issue in the case—was sparse. The opinion did not explain on what basis—contract, statute, or common law—Home claimed that it was entitled to an offset. Gerlich, however, citing to the Insurance Commissioner's statement that the PIP offset provision has been a standard part of automobile insurance policies since 1977, insists that *Dabney* must have been addressing the validity of the PIP offset provision.[57] But the *Dabney* record shows otherwise, confirming what other courts of appeals have concluded—that *Dabney* did not deal with any specific contractual provision.[58]

In its *Dabney* briefs before this Court, Home staked its offset claim entirely on the PIP statute. It argued that because the plaintiffs were passengers, Insurance Code article 5.06–3(h) entitled it to offset the UM award by amounts paid in PIP benefits. Neither party raised any contractual PIP offset provision in the briefs or at oral argument. The record, in fact, does not even include a copy of the policy. In any event, *Dabney* rejected Home's article 5.06–3(h) claim.[59] Because both the *Dabney* opinion and the parties' briefs did

not consider the effect of a contractual PIP offset provision, *Dabney* is not determinative of the validity of the contractual offset provision here.

The offsets Home sought in *Dabney* fundamentally differ from the contractual offsets here. In *Dabney*, Home claimed article 5.06–3(h) should apply to UM/UIM benefits, not merely to prevent double recoveries, but to completely bar stacking of PIP and UM/UIM coverages. This would have been particularly significant in *Dabney* because the passengers' UM/UIM awards were discounted by the jury's finding that the passengers, by not protesting the driver's excessive speed, were partially to blame for their injuries.[60] Plaintiffs' UM/UIM awards, therefore, did not fully account for their actual damages. But under the principles announced in *Tucker, Ranzau,* and *Briggs,* the *Dabney* plaintiffs were entitled to stack PIP and UM/UIM coverages to the extent their actual damages warranted. Unlike Home's article 5.06–3(h) claim, the PIP offset provision here does not prevent stacking, but simply bars double recoveries.[61]

We conclude that *Dabney* does not prohibit the offset either expressly or by implication. *Dabney* rejected a statutory offset claim that operates differently from the PIP offset provision. The PIP offset provision here survives the *Tucker* test to which *Dabney* alluded in rejecting the statutory offset claim—that offsets may not reduce UM coverage below the minimum limits prescribed by the Insurance Code.

▪ In summary, we hold that the PIP offset is valid and enforceable. We turn to

**56.** *Id.* at 389.

**57.** *See* Order of the Commissioner of Insurance, *supra* note 50, at *3 ("The Offset Provision has been in the Texas promulgated policy form since 1977.").

**58.** *See Brown,* 984 S.W.2d at 700; *Kim,* 966 S.W.2d at 779.

**59.** This holding is consistent with *Members Mutual Insurance Co. v. Hermann Hospital,* 664 S.W.2d 325, 328 (Tex.1984), in which we held that UM coverage is not a type of liability insurance. Article 5.06–3(h) only provides offsets against liability claims, not—as Home contended—against UM claims. *See* Tex. Ins. Code art. 5.06–3(h).

**60.** *See* 643 S.W.2d at 389.

**61.** *See supra,* note 29 and accompanying text (explaining how PIP offset provision operates to permit stacking to extent actual damages warrant).

the one issue—specific to *Gerlich*—remaining in this case.

## V

The *Gerlich* plurality based its judgment on two theories. As stated before, it concluded that the PIP offset provision was invalid. But it also concluded that Nationwide failed to demonstrate that $3,500 in UM benefits would have duplicated benefits already paid under PIP coverage. The *Gerlich* plurality observed that no evidence was ever presented indicating that Gerlich sustained only $3,500 in actual damages as a result of the accident.[62] Indeed, it was possible that "she agreed to settle her UM claim for $3,500 to compensate her for the losses that the PIP benefits did not cover."[63] If so, "there would not be a double recovery because Gerlich was compensated for the actual damage she sustained in an amount that was at least $5,708.72, the sum of $2,708.72 for her out of pocket costs for medical bills and lost wages and $3,500 for at least a portion of her damages for mental anguish, future medical expenses or future disability."[64]

We would consider this argument had Gerlich made it. But she never did—not at the trial court, the court of appeals, or here. At oral argument, Gerlich's attorney stated that the whole point of the lawsuit was to determine the validity of the PIP offset. And the validity issue was the only one Gerlich briefed both at the court of appeals and here. Finally, Gerlich has never challenged Mid–Century's characterization of the $3500 settlement as accounting for all of her actual damages. We base our judgment accordingly.

## VI

We conclude that preventing recoveries in excess of actual damages through the duplication of PIP and UM/UIM benefits does not violate the UM/UIM and PIP statutes or *Dabney*. Accordingly, we re-

verse the judgments of the courts of appeals in both *Gerlich* and *Kidd* and remand them to their respective trial courts to apply the PIP offsets and render judgment consistent with this opinion.

---

**62.** *See* 982 S.W.2d at 457.

