# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00562-CV

**Jerman Cookie Company, Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas;**
**and Greg Abbott, Attorney General of the State of Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-01-001492, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a sales and use tax refund suit. Appellant Jerman Cookie Company asserts that certain bakery products sold by Jerman are exempted from Texas sales tax as "food products for human consumption" in accordance with the Texas Tax Code and applicable regulations. Jerman filed suit against appellees—Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas—seeking a refund of sales tax paid on the sales of the bakery products. The district court granted appellees' motion for summary judgment, and Jerman appeals. We conclude that whether Jerman's bakery products are within the "food products for human consumption" tax exemption depends on whether Jerman provides eating facilities, and that the summary judgment evidence demonstrates a genuine issue as to this material fact. Consequently, we reverse the district court's judgment and remand.

*Factual and Procedural Background*

Jerman Cookie Company operates as a retailer within the Vista Ridge Mall in Lewisville, Texas. Jerman sells cookies and brownies in "individual-sized" portions, in "quantities of five or less," and not in a heated state, and does not provide eating utensils.

The Comptroller audited Jerman for Texas sales and use tax compliance for the period of December 1, 1992, through March 31, 1997. The audit resulted in sales tax due on the bakery products sold from Jerman's store. On December 6, 2000, Jerman filed a claim with the Comptroller for a refund of the sales tax that Jerman had paid in accordance with the audit results. *See* Tex. Tax Code Ann. § 111.104 (West 2008). After holding an administrative hearing on the matter, *see id.* § 111.105(a) (West 2008), the Comptroller issued a decision on March 19, 2001, *see id.* § 111.105(b), determining that Jerman's sales were not exempt from taxation. Jerman filed a motion for rehearing, *see id.* § 111.105(c), which the Comptroller denied on April 16, 2001.

Within 30 days of the denial of the motion for rehearing, Jerman filed suit against appellees in district court.[1] *See id.* § 112.151(a), (c) (West 2008). In May 2008, the parties filed cross motions for summary judgment. On June 23, 2008, the district court granted appellees' motion for summary judgment and denied Jerman's motion for summary judgment. Jerman appeals the district court's summary judgment.[2]

---

[1] "The suit must be brought against both the comptroller and the attorney general and must be filed in a district court." Tex. Tax Code Ann. § 112.151(b) (West 2008).

[2] In addition to its claim for a refund, Jerman in its pleadings sought declaratory relief and attorneys' fees. Jerman does not appeal the district court's dismissal of those claims.

*Analysis*

We review the district court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under the "traditional" rule 166a(c) standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When, as here, both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

Texas sales tax is imposed on each sale of a taxable item in the state. Tex. Tax Code Ann. § 151.051(a) (West 2008). An exemption from sales tax exists for "food products for human consumption." *Id.* § 151.314(a) (West 2008). At the time of the applicable audit period, prior to the statute's amendment in 2003, section 151.314(c) defined the statutory term "food products" in a manner that excluded a variety of items from the term, thus making the excluded items taxable. The following are among the items that were excluded from the term "food products" by statute:

> foods and drinks (which include meals, milk and milk products, fruit and fruit products, sandwiches, salads, processed meats and seafoods, vegetable juices, ice cream in cones or small cups) served, prepared, or sold ready for immediate consumption in or by restaurants, lunch counters, cafeterias, vending machines, hotels, or like places of business or sold ready for immediate consumption from pushcarts, motor vehicles, or any other form of vehicle.

3

Act of May 25, 1989, 71st Leg., R.S., ch. 299, § 1, 1989 Tex. Gen. Laws 1258, 1258 (amended 2003) (current version at Tex. Tax Code Ann. § 151.314(c-2)(1)). The parties dispute whether Jerman's bakery products were sold "ready for immediate consumption."

The phrase "ready for immediate consumption" was not defined by statute. However, the Comptroller issued an administrative rule that defined the phrase. *See Perry Homes v. Strayhorn*, 108 S.W.3d 444, 448 (Tex. App.—Austin 2003, no pet.) (Comptroller authorized to adopt rules that clarify and implement tax code (citing Tex. Tax Code Ann. § 151.021 (West 2008))). At the time of the applicable audit period, Comptroller Rule 3.293(a)(9) defined "ready for immediate consumption" as follows:

(A)  Food ready for immediate consumption means the type of food, beverages, or meals normally prepared, served, or sold by restaurants, lunch counters, cafeterias, etc., which, when sold, require no further preparation prior to consumption.

(B)  When food is sold by a retailer who provides eating facilities (tables, trays, chairs, benches, or booths), food ready for immediate consumption also includes:

(i)  all food sold in a heated state;

(ii)  all food sold in individual-sized packages or portions when food heating facilities are available for customer use;

(iii)  all food sold with eating utensils provided, including plates, knives, forks, spoons, glasses, cups, or straws;

(iv)  all sandwiches ready for immediate consumption . . . ;

(v)  all individual ice cream sundries . . . ;

(vi)  all individual-sized portions of bakery products sold in quantities of five or less; and

4

> (vii) all food sold in individual-sized packages or portions requiring no further processing before consumption, when more than 75% of the retailer's gross sales on an outlet-by-outlet basis consist of sales of nonfood items and/or food sold in a heated state, with utensils provided, or in the form of sandwiches or individual ice cream sundries.
>
> (C) When food is sold by a retailer who does not provide eating facilities (tables, trays, chairs, benches, or booths), food ready for immediate consumption also includes:
>
> > (i) all food sold in a heated state, when the food is heated by the retailer rather than the customer;
> >
> > (ii) all food sold with eating utensils provided, including plates, knives, forks, spoons, glasses, cups, or straws;
> >
> > (iii) all sandwiches ready for immediate consumption . . . ; and
> >
> > (iv) all individual ice cream sundries . . . .

16 Tex. Reg. 4066 (1991), *adopted* 16 Tex. Reg. 6691 (1991) (former 34 Tex. Admin. Code § 3.293(a)(9)) (Tex. Comptroller of Pub. Accounts).

Prior to issuing its judgment in this case, the district court, in a letter to the parties, explained its reasoning for its findings that Jerman's bakery products were "ready for immediate consumption" in accordance with former rule 3.293(a)(9) and, therefore, that Jerman's sales of such products were not exempt from sales tax. According to the district court, the bakery products were covered under subsection (A), regardless of whether they were covered under subsection (B) or (C). This interpretation of former rule 3.293(a)(9) is supported by—and, indeed, the district court based its interpretation on—the presence of the phrase "also includes" in both subsections (B) and (C). *See id.*

5

However, appellees conceded at oral argument before this Court that while, under subsection (B), "individual-sized portions of bakery products sold in quantities of five or less" are "ready for immediate consumption" if sold by a retailer who provides eating facilities, those same bakery products are *not* "ready for immediate consumption" if sold by a retailer who does not provide eating facilities, in accordance with subsection (C). *See id.* This concession accurately reflects appellees' position before the district court. Appellees sought summary judgment based on the assertion that Jerman provides eating facilities.[3] Moreover, the summary judgment record contains prior statements by the Comptroller demonstrating that the Comptroller consistently interpreted former rule 3.293(a)(9) such that whether bakery products sold by a retailer in "quantities of five or less" were exempt from sales tax—if sold without eating utensils provided and not in a heated state—depended on whether the retailer provided eating facilities. *See, e.g.*, Tex. Comptroller of Pub. Accounts, STAR Document No. 9203L1162E04 (Mar. 20, 1992) ("[N]o tax is due on bakery products sold from a bakery without eating facilities unless sold in a heated state or with eating utensils provided."); Tex. Comptroller of Pub. Accounts, STAR Document No. 8004T0154C14 (Apr. 8, 1980) ("Since the taxpayer has no seating facilities, any quantity [of cookies] sold without utensils provided will not be subject to tax.").

---

[3] Appellees in their motion for summary judgment stated: "Rule 3.293 does not expressly address the taxability of individual-sized portions of bakery products sold in quantities of five or less when the retailer *does not* provide eating facilities. But the Comptroller's policy is to treat sales of such bakery products as exempt when the retailer does not provide eating facilities." Likewise, in their response to Jerman's motion for summary judgment, appellees stated: "While it is true that the Comptroller does not assess tax on sales of cookies in quantities of five or less from retail outlets that are *not* located in the food court of a mall, the facts in the instant case show that Jerman's retail outlet in the Vista Ridge Mall *is* located in the food court."

An administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference. *ASAP Paging Inc. v. Public Util. Comm'n*, 213 S.W.3d 380, 394 (Tex. App.—Austin 2006, pet. denied). The agency's construction of its rule is controlling unless it is plainly erroneous or inconsistent with the language of the rule, considering the rule's clear, unambiguous language. *See id.*; *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169-70 (Tex. App.—Austin 1997, no pet.). Subsection (B) of former rule 3.293(a)(9) lists "all individual-sized portions of bakery products sold in quantities of five or less" specifically as food "ready for immediate consumption" when the retailer provides eating facilities. 16 Tex. Reg. at 4066. In contrast, subsection (C) omits such category from its list of food "ready for immediate consumption" when the retailer does *not* provide eating facilities. *Id.* at 4067. It is a reasonable interpretation that, since the only distinction in applicability between subsections (B) and (C) is whether the retailer provides eating facilities, when a food category included in subsection (B) is not included in subsection (C), such food category is intended to be taxed for retailers that provide eating facilities, but not for those that do not. *See Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 273-74 (Tex. 1999) ("expressio unius est exclusio alterius," maxim that expression of one implies exclusion of others, while not an absolute rule, is aid to determine legislative intent). Therefore, although we agree with the district court that former rule 3.293(a)(9) can be reasonably interpreted such that bakery products described by subsection (A) are excluded from the tax exemption regardless of subsections (B) and (C), we defer to the Comptroller's conceded practice and application of its rules to the effect that "individual-sized portions of bakery products sold in quantities of five or less" are covered by the tax exemption if sold by a retailer who does not provide

7

eating facilities, in accordance with subsections (B) and (C).[4] *See Perry Homes*, 108 S.W.3d at 448 ("[W]e need only determine whether the Rule can reasonably be read in the manner the Comptroller has chosen to interpret it.").

Consequently, whether summary judgment should be entered depends on whether the summary judgment evidence demonstrates, as a matter of law, that Jerman provides eating facilities—in which case summary judgment should be entered in favor of appellees—or does not provide eating facilities—in which case summary judgment should be entered in favor of Jerman. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. As the taxpayer, Jerman has the burden to show it is entitled to the "food products" tax exemption. *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991).[5]

---

[4] We note that our holding regarding the bakery products at issue here does not apply to sales on or after October 1, 2003. The legislature amended section 151.314 of the tax code, effective October 1, 2003, to expressly include all "bakery items sold without plates or other eating utensils" within the "food products" tax exemption. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 1310, §§ 103, 123(f), 2003 Tex. Gen. Laws 4748, 4786, 4795-96 (codified at Tex. Tax Code Ann. § 151.314(c-3)(1) (West 2008)). The Comptroller amended its rule 3.293 accordingly. *See* 34 Tex. Admin. Code § 3.293(a)(1), (b), (c)(7)(A), (8) (2009) (Tex. Comptroller of Pub. Accounts, "Food; Food Products; Meals; Food Service").

[5] Jerman cites this Court's opinion in *Texas Citrus Exchange v. Sharp*, 955 S.W.2d 164 (Tex. App.—Austin 1997, no pet.), for the proposition that the burden of proof shifts to the Comptroller to show that an *exception* to a tax exemption applies. In *Texas Citrus Exchange*, this Court construed a statute providing that "[e]lectricity is exempt from [sales, excise, and use] taxes *except* when it is employed for commercial use." *See* 955 S.W.2d at 166-67. Thus, if the taxpayer met its burden to prove the "electricity" tax exemption applied, the Comptroller could still support the imposition of taxes on the taxpayer's activity by showing that the electricity was employed for "commercial use." However, even if *Texas Citrus Exchange* accurately characterizes the proper placement of burden of proof, in this case the term "food products"—the category to which the tax exemption applies—is *defined* to exclude certain items sold "ready for immediate consumption." If, then, Jerman's bakery products are sold "ready for immediate consumption," Jerman cannot meet its burden to prove that the tax exemption applies to its bakery products in the first place.

The evidence on this issue indicates the following:

- Jerman's store occupies a corner position inside the indoor mall, with one side facing the main mall walkway, and the adjacent side facing the direction of the food court—which extends perpendicularly out from the main mall walkway.

- The 1989 lease agreement between the owners of the mall and Jerman's store provides that the leased premises are to be used and occupied for the purpose of preparation, storage, and retail sales of bakery products "for off-premises consumption."

- Michael Exum—who was the general manager at Vista Ridge Mall during the audit period, but had been subsequently promoted to another position within the landlord company not affiliated with that mall—stated by affidavit that the landlord does not consider Jerman to be a "tenant of the food court."

- The lease agreement contains an addendum labeled "Food Court Area," which states that Jerman's leased premises "are situated in that portion of the Shopping Center identified as the Food Court Area, and it is intended that said Food Court Area afford the effect of a single, unified food service facility." Exum testified by deposition that there was "not really" a difference between the food court and the food court area. The addendum requires the landlord to furnish and maintain a "Common Seating Facility" and provide personnel to clean and maintain the area, and requires of Jerman that any utensils used be disposable, that employees wear standard uniforms, and that Jerman display the highest degree of care in handling its garbage and keeping its premises in good condition and repair. According to a 1998 letter from Exum to Jerman, the "Food Court Area" addendum was included as part of the lease agreement because Jerman, although not considered a food court tenant, was "in the vicinity of the food court" and, therefore, needed to comply with "the general presentation requirements that applied to the food court tenants to assure consistency among all food vendors."

- The reference to Jerman being required to pay "food court CAM"—a fee to defray the costs of food court usage—was stricken from the "Food Court Area" addendum. In his deposition, Exum expressed his opinion that a tenant not paying food court CAM is not a food court tenant. Also in his deposition, Exum stated that whether, and the extent, a food court tenant pays food court CAM is "up to the people negotiating the lease."

- The summary judgment record includes a mall brochure, copyright dated 1997, that contains a map of the mall listing Jerman's store in the "Food Court" category. Exum stated by affidavit that the map was printed in error, and that the error was corrected in the latest draft of the brochure. The summary judgment record contains a second brochure with a map, also

9

copyright dated 1997, listing Jerman's store in the "Specialty Foods" category, not the "Food Court" category.

- Exum stated, by affidavit, that "virtually all" of Jerman's customers eat the purchased bakery products "while strolling and shopping" at the mall. He admitted in his deposition that he "probably" had witnessed customers of Jerman eating bakery products in the food court.

- Appellees enclosed a photograph of Jerman's store, taken in January 1998, that showed tables and chairs adjacent to the side of the store facing the direction of the food court area. A Comptroller employee stated by affidavit that he took pictures of Jerman's store during the course of the audit, and that the tables and chairs were "part of what is know[n] as the food court." Exum commented in his deposition that the location of tables and chairs is not authoritative as to whether a tenant is in the food court.

Based on this summary judgment evidence, we conclude that a genuine issue remains as to the material fact of whether Jerman provides eating facilities at its Vista Ridge Mall store.[6] Therefore, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop
    Concurring Opinion by Justice Patterson

Reversed and Remanded

Filed:   July 23, 2009

_____

[6] We note that the district court granted summary judgment based on subsection (A) of former rule 3.293(a)(9)—not based on subsections (B) and (C)—and, therefore, did not rule that Jerman provides eating facilities as a matter of law.

10